*Pro Se 2022*

1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

6

7   | George DC Parker II, and | CASE NO. _____ |

Lori A Parker

[to be filled in by Clerk's Office]

8

COMPLAINT FOR A CIVIL CASE

,

9   Jury Trial:  X Yes  ☐  No

Plaintiff(s),

10   v.

11   THE SOCIETY FOR CREATIVE :
ANACHRONISM, INC., a/k/a/ "SCA" :
or "SCA, Inc.", et.al,

12   Defendant(s).

13

14

15   **I. THE PARTIES TO THIS COMPLAINT**

16   A.      Plaintiff(s)

17   Name              George DC Parker II

Street Address    10710 199th St E

City and County   Graham, Pierce

18   State and Zip Code   Washington, 98338

19   Telephone Number   253-302-0014

20   Name              Lori A Parker

Street Address    10710 199th St E

21   City and County   Graham, Pierce

*Pro Se 2022*

| | |
|---|---|
| State and Zip Code | Washington, 98338 |
| Telephone Number | 253-302-0015 |

B.      Defendant(s)

Defendant No. 1

| | |
|---|---|
| Name | Society for Creative Anachronism, Inc |
| Job or Title *(if known)* | |
| Street Address | P.O. Box 611928 |
| City and County | San Jose, San Jose |
| State and Zip Code | California, 95161 |
| Telephone Number | 1-800-789-7486, (480) 263-9305 |

*Pro Se 2022*

Basis for Jurisdiction

What is the basis for federal court jurisdiction?  (*check all that apply*)

☐  Federal question                    X  Diversity of citizenship

C.      If the Basis for Jurisdiction Is Diversity of Citizenship

1.      The plaintiff is George DC Parker II, is a citizen of the State of Washington, county of Pierce.

2.      The plaintiff is Lori A Parker, is a citizen of the State of Washington, county of Pierce.

3.      The defendant, The Society for Creative Anachronism, Inc, (hereinafter referred to as the "SCA", "SCA, Inc."), is incorporated under the laws of the State of California, and has its principal place of business in the State of California. The Society for Creative Anachronism is a foreign corporation or other organized business entity which, upon information and belief, maintains multiple offices in the State of Washington and which maintains its worldwide headquarters and/or principal place of business in San Jose, California, having a mailing address located at P.O. Box 611928,San Jose, CA 95161, 95036-0789.

4.      The Amount in Controversy.

This action is brought by Plaintiffs to the United States District Court for the Washington State pursuant to 28 U.S.C. Section 1332 (a)(1) in that the amount in controversy exceeds the amount and/or value of $75,000.00 exclusive of the interest and costs and the action currently is between citizens of different states.

5. Defendant the Society for Creative Anachronism regularly conducts business within the State of Washington and is a legal alien entity.

6. Among numerous other business activities, the SCA operates in Washington State known as part of the Kingdom of An Tir  (An Tir) which has served and serves its numerous

members in and around Washington since 1968 and otherwise services the greater Pacific Northwest, its members and participants.

7. At the time of filing, venue is appropriate in this judicial district pursuant to 28 U.S.C. section 1391(a)(2) in that a substantial part of the events giving rise to the claim occurred in this judicial district.

8. The Society for Creative Anachronism, Inc. (hereafter "SCA"), represents that it is an international "non-profit volunteer educational organization. The SCA is devoted to the research and re-creation of pre-seventeenth century skills, arts, combat, culture, and employing knowledge of history to enrich the lives of participants through events, demonstrations, and other educational presentations and activities."

9. The SCA has further represented that it "is divided into twenty regions called kingdoms. Each kingdom is ruled by a pair of monarchs who have competed in a Crown Tournament to win the throne. Kingdoms contain local chapters known as Cantons, Shires, and Baronies. The members of these local chapters are the ones who actually plan and run all the events, practices, and other activities for SCA participants."

10. The SCA has over 30,000 members residing in countries around the world.

11. The SCA was founded May 1, 1966 in Berkeley, California by a small group of people.

12. While a person can become a formal member of the SCA, membership is not required to participate in SCA activities or events. Administrative functions, including management of memberships throughout the SCA is performed by SCA employees and/or volunteers at its San Jose, California headquarters.

13. The SCA is run by the Board of Directors who have ultimate authority concerning the interpretation of the SCA's by-laws, rules and policies. The Board of Directors can dissolve any subgroup within the SCA and sanction and expel members.

*Pro Se 2022*

14. The head administrative agent of the SCA is the Society Seneschal. "The Society Seneschal is responsible for coordinating the administration of the Society's historical recreation. This involves directing the activities of the Kingdom Seneschals and of Society-level deputies. Where questions arise concerning the intent of the [Society's laws and policies], the Board specifically authorizes the Society Seneschal to make interpretations and clarifications...the Society Seneschal is also responsible for reviewing all sanction related activities."

15. The seneschal of a kingdom "is the chief administrative officer" of the Society for the kingdom, which includes coordinating the other kingdom officers as required for the smooth operation of the kingdom and for its relations with outside agencies. The kingdom seneschal is the legal representative of the corporation for the group. Duties include management of kingdom volunteers, day to day operations management as well as investigating disputes among members and handing down sanctions as appropriate. The seneschal of a Barony (local chapter)  "is the chief administrative officer" of the Barony within the kingdom, and is also the legal representative for the local group. Duties can include day to day operations for the local group, signing local contracts for sites or services and coordinating the other kingdom and baronial officers as required for the smooth operation of the barony and for its relations with outside agencies.

16. There is a body of participants known as the "Peerage". Prospective peers are nominated by other peers and awarded solely by the crown. Persons obtaining peerage are regarded as the penultimate in Honor, Grace, Chivalry and the other Noble Virtues espoused by the SCA and as seen in their Code of Conduct. Additionally, peers are held up as the highest of authority and are expected to be examples to aspire to and are supposed to act in accordance with the chivalric virtues of honor and service in all interactions with SCA members and participants. peers are local leaders of groups, take students to train to become peers and are generally accepted as the highest example of behavior expected in the SCA.

*Pro Se 2022*

17. Individual members submit a name and device to the SCA Corporate office for "registration". The SCA frequently and publically assigns those names to the individual, and not the Corporation. Many members use the name assigned at events, use them on Social Media and in other organizations.

18. The crown of a kingdom is chosen by combat (Crown Tourney), and is almost exclusively a member of the peerage. There are no specific requirements for becoming the Crown, except that the contender wins the tournament. The Crown is held for a six-month period. The Crown gives awards based on recommendations from members, and holds medieval-style courts to present the atmosphere of the Middle Ages. Crowns can hand down sanctions, bestow peerages, accept officer- volunteers as well as create and amend the laws of their kingdom as they deem necessary. They can appoint officers of the kingdom and hold courts to administer the kingdom.

## II. STATEMENT OF CLAIM

19. Plaintiffs George Parker (George) and Lori (Lori) Parker were /are members of the SCA and were active in a subchapter of the SCA and the Kingdom of An Tir, Barony of Blatha an Oir (Tacoma, Pierce County, Washington) from 2006 until 2021. Plaintiffs participated fully, remaining as paid members for over 30 years, beginning in Arizona and continuing after they moved to Washington State. Plaintiffs volunteered for positions, held offices, participated at events, been a vendor at events and generally contributed to the atmosphere and learning environment of the SCA. Plaintiffs were given numerous awards for artistry and service from 2 kingdoms (both Arizona and Washington), including many from An Tir. Plaintiffs managed a popular sales/vendor booth during their time in the Washington kingdom of An Tir, traveling extensively throughout Washington, Oregon, California and Arizona vendoring heavily at predominantly SCA events and others.

Pro Se 2022

20.  In 2016, Lori volunteered for a position in the kingdom known as the Kingdom Youth and Family Achievement ("YAFA") Officer under the then Kingdom Seneschal Julia Sempronia (legal name unknown). In January 2017, Julia was replaced by Lenora Truble (legal name Tami Hayes). Shortly after, Lori began experiencing issues with another Kingdom officer regarding background checks. The SCA required the words "YAFA Mentor "to be placed on background checks, and Lenora Tuble and her associate Angharad Albanes (legal name unknown) pushed back, refusing to implement the change. Lenora Truble adamantly refused to adjust the wording on the documents.

21. On Saturday, September 2nd, 2017, Lori did try to engage Lenora Truble in a face to face conversation regarding the issue at the Crown Tourney event in Canada, but Lenora was too busy to attend the meeting she (Ms.Truble) requested.  On September 21, 2017 Ms. Truble sent an email regarding "complaints" on the length of time Background checks were taking. Lori asked if the instructions for YAFA Mentors had been added to the Kingdom instructions. Conversations by Ms. Truble in subsequent emails were dismissive and failed to address Lori's concerns. On September 21, Lori emailed her Society Officer Supervisor with concerns regarding the issues she was having with Ms. Truble. On September 23, 2017, the supervisor (David Keen, now deceased) then contacted A.J Pongratz, then Vice President of Operations/Society Seneschal. Mr. Pongratz then contacted Lenora Truble, with CC's to the corporate office, the corporate treasurer, Lori, and Davis Keen regarding the Background check issue. On September 27, 2017, Ms. Truble sent an email with the "new" instructions for background checks.

22. On or about October 18th of 2017, the An Tir Social Media Officer Isabella (legal name Mary LaRose) was added to the An Tir YAFA Facebook Page, run by Lori Parker for the families involved in the YAFA program. The page was set to "private" because the page contained identifiable information regarding under-age youth participating in the program. She immediately added the Kingdom Seneschal, Lenora Truble to the page. Shortly after, Plaintiff Lori Parker received a private message from Mary Larose asking her to change the privacy to

*Pro Se 2022*

1  "Public". Lori objected, stating the page contained information and pictures of the children. She

2  also stated that according to the Social Media Policy, the page did NOT follow the guidelines set

3  for making the page public. Conversations went back and forth for 2-3 days. On October 20th,

4  Lenora Truble referenced Lori's personal Facebook page, copying into the email itself some of

5  the content of Lori's post. Ms. Truble was NOT a friend on Facebook or other Social Media, and

6  therefore her referencing Lori's personal page was uncomfortable and resembled stalking. Too, it

7  was Lori's personal page, and as such, did not fall under the SCA Social Media Policy.   On

8  October 22, 2017, Ms. Truble sent an email releasing Lori from her Kingdom position, citing "

9  you refused to make those changes, you have taken yourself off of the admin entirely for the

10  YAFA page (something you were not asked to do), and you blocked both myself and Isabella

11  from your Facebook profile, meaning that neither of us can see your posts to the YAFA page or

12  any other group page." As a note: being on Facebook was never a requirement for participation in

13  the SCA, nor is it a requirement for holding an SCA office. She continued saying "Deliberately

14  refusing a direct and reasonable request from me and then blocking me from seeing public

15  FaceBook posts you make, on any group page, makes for an untenable working relationship. This

16  latest incident adds to a growing list of issues you have had with both myself, with other officers

17  and with event staff." The email culminated in the statement that Lori was removed from her

18  office. In September 2017, Lori had taken on the position of Deputy to the Society YAFA officer,

19  and later in August 2018, after being let go from the Kingdom office, Lori became Society Youth

20  and Family Achievement Officer.

        23. After Lori's removal from the Kingdom position, both Lori and George began to

experience issues within their home group of Blatha An Oir (BAO). Beth Park, Jonnalyhn

Wolfcat Prill, Francisca Ossiander, Dawn Chronister and Denise Coyle (all legal names, to the

best of Plaintiff's knowledge)  were some of the primary attackers. Including online attacks from

members of the Tacoma, Seattle, Olympia and other groups and of the local Peerage.

24. In late 2018 the position of Baronial Arts and Sciences office opened in the Tacoma branch of Blatha An Oir, hereafter referred to as BAO. George stepped up to volunteer, and was told he would need the paperwork filed by the then Baron Gernon (legal name unknown). George was informed that the new Arts officer would be Jonnaylyn (known as Jonnalyhn Wolfcat Prill, legal name uncertain). This is important due to the circumstances that followed. On January 1st, 2019, George tried to add a class to a Thursday Social, and was verbally attacked on Facebook by Beth Park, Jonnalyhn Wolfcat Prill, Francisca Ossiander, Dawn Chronister and Denise Coyle as well as other officers and members in the Barony. Lori was also attacked online in the same conversation, and on private messaging by Beth Park, Jonnalyhn Wolfcat Prill and Francisca Ossiander.

25. On November 20th of 2018, George and Lori sent in their letter of intent to become Baron and Baroness of the BAO group. The SCA has no set rules or guidelines pertaining to volunteers wishing to serve as Baron and Baroness, or indeed, any office up to and including financial and legal representatives. Once the letter was made public, George began to experience many cases of harassment and bullying from various officers and general members of the SCA. He was contacted via Facebook messenger and called a Nazi and other names.

26. The harassment and bullying became public during the Crown Tourney event in May, when George and Lori were asked to meet with a Peer, Rapheella Di Contino (legal name unknown). Plaintiffs had put out on social Media that they would be available to meet with Baronial members to answer any questions they may have regarding Plaintiffs volunteering for the office/roles of Baron and Baroness. Rapheella Di Contino (legal name unknown) asked to be met with at a location run by Patrick Fletcher, stating it was a "neutral" location. Accompanying Plaintiffs were LaToya Johnson and 2 others. The suggested location was public, with many bystanders around who heard every word spoken by Ms. Di Contino, as she made no effort to control the tone or loudness of her voice. Unbeknown to Plaintiffs at that time, Patrick Fletcher was one of a group of people who had been slandering George online and in private messages.

*Pro Se 2022*

Ms. Di Contino proceeded to fling abusive language at both George and Lori, in the presence of witnesses. She called George a Nazi, and Lori abusive. She reiterated those comments over and over, embellishing and adding to the statements, and was heard by at least 4 bystanders known to Plaintiffs, as well as 3 personal witnesses Plaintiff themselves brought to the meeting. Following this incident, harassment by the general SCA members increased for both Lori and George, and became very public, with incidents appearing on the Social Media pages of the local Barony, as well as other social media pages ostensibly managed by the SCA.

27. On July 3rd, 2019 George and Lori sent an email to the Kingdom Seneschal Alianora Greymoor, (Kirsten Chow) regarding the incident with Ms. Di Contino. On July 8th, the Kingdom Seneschal responded, referring the Plaintiffs back to the local Seneschal Beth Park. On July 8th, the plaintiffs emailed the complaint to Beth Park. On July 17, the Plaintiffs emailed Beth Park again, having received no response to their original email. Later, Plaintiffs were informed that Ms. Di Contino, Beth Park and Jonnalyhn Wolfcat Prill were great personal friends.

28. On July 31st, Plaintiffs contacted Mike Watkins, then Vice President of Operations/ Society Seneschal, regarding concerns they had about the recent polling for Baron and Baroness in Blatha An Oir. Plaintiffs' questioned Mike Watkins regarding the "votes" by populous members and how members could choose any number of candidates, how plaintiffs were told that the ballots cast had been "burned" and were unavailable for recount or verification purposes.

29. On September 4th, Lori had a conversation with Beth Park via Facebook messenger asking when they could formalize plaintiffs' complaint against Rafaella di Contino. On September 10th, in compliance with Corporate Policy on disputes,  plaintiffs met with the Baronial Senechal Beth Park, Francisca Ossiander and Elizabeth Lewis. On October 20th, plaintiffs requested the transcript of the meeting, per Corporate Policy. On October 25-27, all parties were in attendance at an event, and plaintiffs still did not receive the requested transcript.  On October 28th, the transcripts were yet again requested via email, with the Kingdom Seneschal CC'd, without response.

*Pro Se 2022*

30. On October 28, 2019 Plaintiffs submitted a statement that had been requested from the kingdom seneschal, Ms. Chow, which included the requested sanctions against the parties involved in the complaint to Ms.Chow- then seneschal for An Tir. On Nov. 7th, Ms. Chow acknowledged receipt of the complaint. On Nov. 11th, Ms. Chow assigned Attia Prima (legal name unknown) to investigate the incident. On November 25th, Lori emailed the investigator that the harassment was continuing, providing a multitude of documents and screenshots. In December 2019, Plaintiffs were informed that the investigation had been completed, and a disposition would be given mid-January. Plaintiffs knew that several of their named witnesses had NOT been interviewed by the investigator Attia Prima. Plaintiffs then emailed the Society Vice President/Seneschal, Mike Watkins about the failure to follow procedure.

31. On February 26th, 2020, the then King and Queen of An Tir, Emerson Waite and Helen Holmes, informed plaintiffs via email of the results of the investigation via Ms. Chow. The result was prohibiting all parties from posting to official Social Media for 6 months. On March 3rd, the plaintiffs were provided with a summary of complaints against THEM, and were never provided copies of their own complaint as required by Corporate Policy, which they had asked for a multitude of times.

32. On March 15, 2020, Plaintiff George reached out to the then SCA president John Fulton, as well as the Corporate Vice-President for Operations / Society Seneschal Mike Watkins regarding the bullying and harassment he was receiving and the complaint he sent Mike Watkins regarding such. Included were questions regarding the process, and details of how the so-called investigation had been conducted. On April 8th, 2020, Lori emailed the Vice-President for Operations / Society Seneschal with 3 documents, outlining her complaint with the kingdom of An Tir crowns, Emerson Waite and Helen Holmes. as well as the investigative process and the harassment she was receiving online. On April 27th, 2020, Mike Watkins replied stating he would contact Ms. Chow regarding the lack of interviews.

33. Over the next several months, no additional moves were made regarding the complaint. The complaint and the appeal of the original decision handed down by Emerson Waite and Heather Holmes via Ms. Chow was allowed to stand without penalty. Plaintiffs continued to be bullied online via messenger and Facebook. Once the 6 month hiatus was over, SCA members again used Facebook to harass and attack Plaintiffs. In Nov. of 2020 Lori emailed asking what happened with her filed complaint and received no answer. To date, there has been no response.

34. On April 1 of 2021, Plaintiff George Parker was engaged in a conversation on Facebook on a friend's page (LaToya Johnson). This was a persona page of an SCA member, but not an official page as outlined in the Society Media Policy. This page was the personal page of Ms. Johnson, who had since moved back to Louisiana, and was n longer part of the kingdom of An Tir. This page was not managed or owned by the SCA, nor was content therein managed or moderated by the Corporation or its officers,as per their own corporate policy. Plaintiff George Parker objected to a term used by the original poster, and was attempting a polite discourse on why he found that particular term offensive. He was ridiculed for his stance, harassed and baited by persons known to him, including a person who had been currently sitting as a Baron in Oregon, as well as other Peers personally known to him; Elizabeth Phipps (legal name unknown, a peer from Blatha an Oir), Skamp Widegrin (legal name unknown) who, in the thread, admitted to being the current baron of the Portland, Ore group, Michelle Height (legal name unknown), Angela Gallant, Stephanie McCloud, Rachel Somers and Joel Reid, Jr., (all assumed as legal names) until he lost patience and his temper and made an off-color remark that many objected to, but was allowed by Facebook standards. The remark was almost immediately removed, only to be subsequently reposted by Rachel Somers with the tag "dirty deletion". Many of the persons involved in that conversation, including the original poster (LaToya Johnson) are deeply involved with the SCA Diversity, Equity and Inclusion facebook groups, as well as local SCA sanctioned DEI committees, groups and offices. The repost remained for several months.

Pro Se 2022

35. On April 2nd of 2021, George was notified via email (and later certified mail) that he was exiled from the kingdom of An Tir- exile meaning he could not engage in any SCA activity in An Tir. He was further told his case would be sent to the Board for consideration of Removal, Revocation and Denial of Membership (hereinafter referred to as "R&D"), The announcement was publicly placed on official SCA Facebook venues (groups) and other social media venues, their official Kingdom website, kingdom newsletter as well as being re-posted onto private pages held by members and non-members.

36. Within hours, negative comments from Plaintiff's local groups showed up on the official Baronial Facebook pages. Not only was George mentioned, but Lori also, and the name of their vendor booth, attached to comments that they were abusive and racist. On April 7th 2021, Lori emailed the seneschal regarding the posts, as was "assured" that the content would be removed from official Facebook groups. Plaintiff responded that the removal wasn't good enough, and that she wished for more action. No adequate response was given.

37. Plaintiff wrote the SCA Board asking for an appeal of the exile. The Board consists of peers voted in by other Board Members. Plaintiff enumerated his disability, Asperger's and ADHD, including excerpts from the Autism Society and the DSM IV. Plaintiff also enumerated the failure of the local representatives of the corporation to follow corporate policy regarding investigation for exile, failure of the Diversity, Equity and Inclusion Officer to intercede, as outlined on the SCA webpage and in the Society DEI Handbook. Plaintiff included information regarding the bias on the part of the officer corps in An Tir, bias related to previous interactions and complaints regarding the actions of peers, the so-called epitome of SCA chivalric behavior.

38. On April 7, 2021, George sent an email to the then Society Vice-President /Seneschal Lis Schaer, regarding his exile from An Tir, clearly outlining what had happened (including screenshots), and including an explanation of Corporate policy that local officers had failed to follow, along with information regarding his disability. That email was ignored by the Corporate office, with a simple receipt response.

*Pro Se 2022*

39. In August of 2021, Plaintiff George Parker was notified of the pending investigation being instituted by the Board of Directors. He was told an investigator had been assigned, one Stacy Hall.

40. In late August, Plaintiff George Parker was notified once again, that the matter was "completed" BEFORE George had a chance to tell his side.  Plaintiff George Parker was notified via email that the investigation was closed, as the investigator assigned, Stacy Hall, had attempted to contact Plaintiff George Parker on 3 separate occasions with no response. George immediately contacted Ms. Schaer, who claimed Stacy Hall had a mistake in the email address. There were no phone calls nor other attempts to contact Plaintiff, except via email, prior to his conversation with Ms. Schaer.

41. Subsequent emails regarding the so-called investigation made it clear the lack of training both Ms. Schaer and Ms. Hall had with dealing with persons with disabilities.  Ms. Schaer even went so far as to call Plaintiff George Parker's email tone "aggressively adversarial" in one email. The investigation process includes the criteria that those being investigated take part in a video call. Plaintiff George Parker declined the video call, due to his disability making it difficult for him. Plaintiff submitted his rebuttal to the complaint against him via email to Ms. Hall on September 17, 2021, after several intervening emails. Later Plaintiff found out his refusal to submit to a video conference counted against him in the investigative process, as per corporate documents. On October 23, 2021 at the quarterly meeting, held publicly via video conference, Plaintiff George Parker was formally given the Removal and Denial of Membership from the SCA. On October 27th, 2021, the Board issued an emergency removal of Emerson Waite, the king who initially exiled Plaintiff George Parker.

42. On January 15, 2022, Plaintiff George Parker submitted his appeal to the office of the Vice President/Seneschal, Ms. Schraer, outlining the way the Society officers both local and Corporate, failed to follow corporate guidelines and procedures, and how the corporate officers failed to follow the corporate Social Media Policy. He outlined the bias of the officers in An Tir

when it came to dealing with both Plaintiffs, Lori and George. On February 28th,  Ms. Schraer

supposedly submitted the appeal to the Board of Directors, who declined to hear the appeal.

43. On March 12, 2022, Plaintiff Lori Parker emailed the Vice president/Society

seneschal Ms. Schraer and each Board member individually specifically citing the failure of both

kingdom and Corporate officers in following Corporate policy, specifically Section VI A.4 and

A.5 as well as Section VI C 1 of the Society  Seneschal handbook. Corporate Policy (Corpora)

Section F.1, and Section X.4 were not followed. In addition, Lori pointed out the Diversity,

Equity and Inclusion webpage and Mission Statement had failed to be followed. This email was

given a short response by Ms Schraer, and when pursued, Ms. Schraer stated she would no longer

discuss the matter with Plaintiff Lori Parker. Board members did not respond.

44. On June 15, 2022, Plaintiff George Parker once again asked for an appeal of the

R&D. The Board decided that his request did not include new information, and so the appeal was

again denied.


COUNT I – NEGLIGENCE

45. Plaintiff incorporates herein by reference all the above allegations contained in

paragraphs 1 through 44 and throughout this entire complaint as though the same were fully set

forth herein at length.

46. The defendant was negligent and/or reckless including but not limited to, inter alia,

the following:

a.  negligently fostering and condoning a hostile work environment;

b. negligently failing to protect Plaintiffs and other members from hostile environments at

SCA related activities and/or events;

c. negligently failing to protect Plaintiffs and other members from the retaliatory action

from Peers and officers;

d. negligently failing to adopt, enforce and/or follow adequate policies and

procedures for the protection from harassment, defamation, slander and bullying at SCA related activities and/or events, of its members including plaintiffs and, in the alternative, failing to implement and comply with such procedures which had been adopted;

e. negligently failing to implement, enforce and/or follow adequate protective and supervisory measures for the protection of members from harassment, defamation, slander, bullying and false allegations;

f. negligently failing to adopt, enforce and/or follow policies and procedures to protect its members;

h. failing to adopt, implement and/or enforce Social Media policies that clearly define what constitutes "SCA Official" and what is not governed by the SCA media office.

i. failing to adopt, implement and/or enforce comprehensive policies and procedures for the office of Diversity, Equity and Inclusion;

j. negligently failing to adopt, enforce and/or follow policies and procedures to protect its members with disabilities, specifically including but not limited to, the "invisible" disabilities such as Asperger's or similar ASD, learning disabilities, MS, ADHD, arthritis, brain injuries, mental illnesses, diabetes, epilepsy, cognitive and learning disabilities, chronic pain etc;

k. negligently failing to provide adequate training to  SCA officers, both local and Corporate, in matters of personal relations and proper interactions with members with disabilities, specifically including but not limited to, the "invisible" disabilities such as Asperger's or similar ASD, learning disabilities, MS, ADHD, arthritis, brain injuries, mental illnesses, diabetes, epilepsy, cognitive and learning disabilities, chronic pain etc;

l. negligently failing to adequately provide a publicly accessible, reasonable, clear process for determining who is qualified for Crowns, Peerages or corporate and local offices;

m. negligently failing to adopt a uniform standard of review of Peerage and all officers to assure continued adherence to policy and guidelines;

*Pro Se 2022*

n. negligently violating its own policies and/or by-laws regarding revocation and denial of membership;

o. negligently failing to implement, enforce and/or follow adequate consistent and published guidelines regarding specific conditions that would result in exile, banishment and/or R&D;

p. negligently failing to implement, enforce and/or follow adequate consistent and published guidelines regarding least restrictive sanctions and punishments that fit the circumstances of the infraction as per corporate documents;

q. negligently violating its own policies and/or by-laws regarding the investigation of complaints;

r. negligently failing to provide adequate training to SCA officers, both local and Corporate;

s. negligently failing to adopt, implement and/or enforce policies and procedures for the reporting to SCA authorities and/or other authorities harassment, bullying, defamation and slander;

t. negligently failing to adopt, implement and/or enforce policies and procedures for the resolution of complaints against other members, specifically, members of peerage or officers;

u. negligently failing to adopt, implement and/or enforce policies and procedures for the resolution of complaints against other members, specifically, members of peerage or officers, that includes mediation or other universally accepted measures;

47. As a proximate and direct result of Defendant's negligence and/or reckless conduct described herein, Plaintiffs were harmed as a result and have sustained emotional injuries, mental anguish, pain and loss of enjoyment of life and life's pleasures;

48. Defendant SCA owes a duty of reasonable care to its members in its activities and functions. The SCA has, through its history, policies and procedures negligently

*Pro Se 2022*

1  and/or recklessly breached this duty. Defendant SCA knew or should have known of the targeted

2  harassment, to include the retaliation removal of Plaintiff Lori Parker from a kingdom office and

3  the harassment both suffered at the hands of Raffaella di Contino, Jonnalyhn Wolfcat Prill, Beth

4  Park, LaToya Johnson, Elizabeth Phipps, Skamp Widegrin (legal name unknown), Michelle

5  Height (legal name unknown), Angela Gallant, Stephanie McCloud, Rachel Somers, Joel Reid,

6  Jr.(all assumed legal names) and others unnamed, and the eventual R&D of Plaintiff George

   Parker.

7       49. The SCA's acts of negligence and/or recklessness which led to Plaintiff George

8  Parker's Revocation and Denial of membership occurred from 2016 through 2021. Instead of

   taking any reasonable steps and exercising due care to protect Plaintiffs George and Lori Parker

9  from harassment and abuse, the SCA adopted a "ignore it and it will go away" attitude to

10  negligently and/or recklessly ignore the known problems as described above.

11      50. The SCA negligently failed to implement, enforce and/or follow protective measures

12  including enforcing its own policies and procedures against bullying and harassment.

13      51. The SCA negligently failed to implement, enforce and/or follow the published social

   media policy wherein it clearly states personal pages are not governed by the SCA.

14      52. The SCA negligently failed to implement, enforce and/or follow protective measures

15  including enforcing its own policies and procedures for Diversity, Equity and Inclusion.

16      53. Plaintiffs George and Lori Parker bring this action for injunctive relief in that they

17  were further harmed by the removal and revocation of Plaintiff George Parker's membership,

18  destroying their medieval business The Norse Gypsy Forge, leaving them with thousands of

   dollars debt, and thousands of dollars of inventory and supplies, through a process that was in

19  contravention to the SCA by-laws and policies.

20      54. As a proximate and direct result of Defendant's negligence and/or reckless conduct

21  described herein, Plaintiffs were harmed as a result and have sustained emotional injuries, mental

*Pro Se 2022*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

anguish, pain and loss of enjoyment of life and life's pleasures, loss of business and business opportunity;

55. Defendant SCA knew or should have known about the severe risk of their failure to take any appropriate precautions outlined above and acted in a reckless disregard to such risk for which plaintiffs are entitled to and hereby seeks punitive damages pursuant to the requirements of Washington State law.

56. Defendant SCA's actions and failures described herein are outrageous and were done recklessly with a conscious disregard of the risk of harm to Plaintiffs and their rights or on other grounds for which plaintiffs were entitled to and hereby seeks punitive damages in every count of this complaint.

### COUNT II - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

57. Plaintiff incorporates herein by reference all the allegations contained in paragraphs 1 through 56 and throughout this entire complaint as though the same were fully set forth herein at length.

58. Defendant had a duty to plaintiff to ensure plaintiffs were not harassed, defamed, slandered, put in fear of losing their business through the conduct of their officers.

59. Defendant by and through its contact with plaintiffs, as described above, negligently and/or recklessly committed multiple acts of extreme and outrageous conduct which caused severe emotional distress to both plaintiffs as described more fully above in an extreme, outrageous and harmful manner.

60. Defendant negligently breached the trust to plaintiff leading to their damages and injuries.

*Pro Se 2022*

COUNT III – INJUNCTIVE RELIEF

61. Plaintiffs incorporates herein by reference all the allegations contained in paragraphs 1 through 60 and throughout this entire complaint as though the same were fully set forth herein at length.

WHEREFORE, Plaintiffs request that the Court order the SCA to reinstate Plaintiff George Parker's membership immediately until the outcome of this proceeding is judged to compensate him for his loss of business, dignity and reputation. Plaintiffs request that Plaintiff Lori Parker be given an extension of her membership to compensate her for her loss of business and enjoyment of her hobby and lifestyle during the time of Plaintiff George Parker's R&D.

62. As described above, the Plaintiffs' enjoyment of their membership in the SCA and their rights as members have been adversely affected by the Defendant's violation of the SCA's by-laws, rules and policies.

63. Plaintiffs were members in good standing for 31 and 29 years respectively, with no sanctions or other corporate actions against them. Plaintiffs were active in volunteering, presenting research, publishing in the Corporation's magazine, teaching classes as well as holding offices. Plaintiffs lost income from their part time business, as it was developed to cater directly to predominantly SCA events and members. This has left the Plaintiffs with inventory and other assets, as well as debt. Plaintiffs have invested thousands of dollars over the last 30 years in the form of membership fees, event registration fees, hotel bills, clothing, accessories, camping equipment, vehicle maintenance, inventory, goods for assembling inventory and other necessary items to present the standard of organizational participation that was expected of all members. Plaintiffs have suffered emotionally from being ripped away from activities and hobbies that had been a major portion of their life and livelihood, as well as from the overt and covert slander from members. Both Plaintiffs suffered sleeplessness, depression, loss of friendships, loss of income, loss of enjoyment and more.

64. Simple damages cannot restore the Plaintiffs to their status prior to the adverse actions of the SCA.

65. Irreparable harm will occur to Plaintiffs if the R&D remains, and their rights as members of the SCA will continue to be violated as they will continue to be unable to benefit from their membership with the SCA. In particular, Plaintiff Lori Parker, has been unable to attend or vend at events, and has been unable to enjoy the benefits of the last year of her paid membership.

66. The Plaintiffs will be successful on the merits of the case, in that the SCA has caused harm through violating its own policies and by-laws.

67. The Plaintiffs will be successful on the merits of the case, in that the SCA has caused harm through violating Washington Law.

68. Lastly, the benefits to the Plaintiffs in the restoration of Plaintiff George Parker's membership, the restoration of their rights to hold office within the SCA outweigh the burdens to the SCA in allowing the revocation and denial of membership  to stand.

## III. RELIEF

WHEREFORE, Plaintiffs claims of Defendant, The Society for Creative Anachronism, Inc., damages in excess of $150,000 together with costs, interest, punitive damages and attorneys fees as permitted by law. Plaintiffs suffered emotional and mental distress which persists to this day, loss of friendships, recreation, loss of business, opportunity and quality of life.

WHEREFORE, Plaintiffs request the court to direct the SCA to:

    a. Announce the reversal of the Revocation and Denial of participation of Plaintiff George Parker II on all media platforms owned and managed by the corporation.

    b. Issue an apology to Plaintiff George Parker II on all forms of official communication in the organization, including the Facebook groups.

    c. Extend a lifetime membership to Plaintiff George Parker II.

*Pro Se 2022*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

   d.   Extend a lifetime membership to Plaintiff Lori Parker.

   e.   Revise or otherwise amend the Corporate documents to clarify and define the actions that will result in a Revocation and Denial of participation.

   f.   Revise or otherwise amend the Corporate documents to clarify and define the actions that will result in a Kingdom sanctions above banishment from the presence of the Crown.

   g.   Revise or otherwise amend the Corporate documents to clarify and define the least restrictive sanctions and punishments that fit the circumstances of an infraction.

   h.   Revise or otherwise amend Corporate documents to clearly state that personal pages are not governed or monitored by the SCA, and that any content on non-SCA pages is not subject to SCA oversight or punishment.

   i.   Revise or otherwise amend the Corporate documents to clarify that persona names do not automatically show or otherwise denote SCA participation or membership.

   j.   Adopt and implement a clear, concise Diversity, Equity and Inclusion Handbook that includes specific information, training requirements, mediation processes and remedies for those with the so-called invisible disabilities as listed above.

   k.   Adopt and implement clear, mandatory Diversity, Equity and Inclusion training for all officers that is tracked for security, and that includes specific information, remedies and processes for those with the so-called invisible disabilities outlined above.

   l.   Adopt and implement a concise guide for the election of all officers that is universally applied and available to all members.

   m.   Adopt and implement a concise guide for the elevation of members to the Peerage that is universally applied and available to all members.

*Pro Se 2022*

n.   Adopt and implement a concise guide for determining who is qualified for Crowns, Peerages and offices (local and national level) that is universally applied and available to all members.

o.   Revise or otherwise amend the Corporate documents to clarify the complaint process at the local and national level.

p.   Revise or otherwise amend the Corporate documents to adequately address member protection from harassment, defamation, slander and bullying at SCA related activities and/or events that are available to all members.

q.   Revise or otherwise amend the corporate documents to clarify local and corporate requirements for the Seneschal office candidates to participate in mandatory conflict resolution training.

r.   Revise or otherwise amend the corporate documents to clarify local and corporate requirements for the Crown or Coronet candidates to participate in mandatory conflict resolution training.

s.   Revise or otherwise amend the Corporate documents to clarify the investigative process at the local and national level.

t.   Revise or otherwise amend the Corporate documents to provide clear policy and procedures for the complaint process to include mediation by 3rd parties unaffiliated in any way with either complainant or defendant, that is universally applied and that is available to all members.

u.   Revise or otherwise amend the Corporate documents to clarify the requirements for the appointment of investigators which includes mandatory training in conflict resolution at the local and national level.

v.   Removal of the requirement in the investigation procedures for video conferencing with an investigator.

*Pro Se 2022*

w.  Revise or otherwise amend the Corporate documents to allow for the appeal of local actions up to and including R&D.

x.  Revise or otherwise amend the Corporate documents to allow for the appeal of corporate actions up to and including R&D.

y.  Revise or otherwise amend the Corporate documents to allow for the appeal of local and corporate actions up to and including R&D, that does not include a requirement for "new information".

z.  Revise or otherwise amend the Corporate documents to allow for the appeal of local and corporate actions up to and including R&D, that includes remedies for officer malfeasance.

### IV. CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

*Pro Se 2022*

Date of signing:          1/12/2023

Signature of Plaintiff

Printed Name of Plaintiff     George DC Parker II


Date of signing:          1/12/2023

Signature of Plaintiff

Printed Name of Plaintiff     Lori A Parker