UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

George DC Parker II, and

Lori A Parker,

                Plaintiff(s),
v.

THE SOCIETY FOR CREATIVE :
ANACHRONISM, INC., a/k/a/ "SCA" :
or "SCA, Inc.", et.al,

                Defendant(s).

Case No. 3:23-cv-05069-RJB

OPPOSITION TO MOTION
TO VACATE DEFAULT
JUDGMENT

    Plaintiffs George DC Parker II, and Lori A Parker, appearing Pro Se, submit this Opposition to the Defendants pending Motion to Vacate Default Judgment, and hereby request this Court to deny the defendant's motion to vacate default judgment based on the following:

    Plaintiffs filed their complaint on January 25, 2023, and received approval to proceed in forma pauperis on April 17, 2023. DKT. 8.

    Plaintiff's Complaint was entered on April 17, 2023. DKT. 9.

    Plaintiffs filed their Affidavit of Service of Summon that was effected on April 23, 2023. DKT. 15.

    The SCA answer to the complaint was due 20 days later, no later than May 15, 2023.

    Plaintiffs brought their motion for default judgment on May 16, 2023. DKT. 16. The clerk entered Default against SCA by minute entry on May 18, 2023. DKT. 18.

Plaintiffs submitted the Unsigned (Proposed) Order for Default Judgment on May 19, 2023 (DKT 19).

Defendants filed a Notice of Appearance on May 19, 2023 (DKT 20).

## I.     ARGUMENT

1. Plaintiff's Process Server statement (Exhibit A) shows that the Defendant's agent was in fact served in accordance with rule 55(2)(b).

2. Defendants claim that they were notified of possible litigation as early as January 2023 (DKT 26, ¶2). The complaint was originally filed on January 25, 2023. The declaration states that Plaintiffs *"threatened to file a lawsuit against the SCA if they weren't reinstated as members."* This is a false narrative. On January 17, 2023, Plaintiffs provided the SCA with a draft portion of the complaint, and requested that an out-of-court settlement could be reached by simply reinstating Plaintiff George Parker's membership. (See Exhibit D, email) Lori Parker was and continues to be a paid member in good standing (See exhibit B, membership screenshot).

3. As of February, 2023, Defendants assert that they were aware of the lawsuit having been filed (see DKT 26 ¶2)

4. Defendants claim the lawsuit was "rejected" by the court in February 2013 (DKT 26, ¶2), when in fact, the court allowed Plaintiffs an extension to show cause (DKT 6). There is no signed document on file with this court that suggests that the lawsuit was rejected.

5. On April 17, 2023 (DKT 8) the court granted the plaintiffs motion to proceed in forma pauperis.

6. The complaint was then entered on April 17, 2023 (DKT 9).

7. Defendants claim they were not informed of the summons until May 14, 2023. However, in the Declaration of Eban Kurtzman (DKT 26, ¶2) it is stated that the Defendants In-House Counsel Eban Kurtzman signed up for a service called "CourtListener '' to insure that they would be notified should the lawsuit move forward.

8. On April 24th, LaToya Johnson contacted Plaintiffs a mere 8 hours following the service of the summons offering a link to the Courtlistener. The link was provided to her by another SCA member, who is unnamed at this time (See Exhibit C, messenger conversation). This shows that CourtListener was updated relatively immediately following the entrance of the complaint into ECF. Plaintiffs contend that Defendants would also have been notified, especially since In-House Counsel Eban Kurtzman specifically noted having signed up for the service (DKT 26, ¶2) to track future filings by Plaintiffs.

9. Mr Kurtzman goes on to say that he was notified on May 14th (through CourtListener) that the case had been filed. He then goes on to say that he was notified on May 16th of the filing. (DKT 26, ¶P3). Mr Kurtzman clearly contradicts himself in this declaration.

10. Plaintiffs contend that the SCA had ample opportunity and resources, and had indeed taken steps to insure notification of future action on the part of the Plaintiffs. Defendants' claims of a lack of service or faulty service are belied by their very actions and by the declarations submitted via DKT 25 and DKT 26.

11. Defendants blame CT-Corporation for not updating the corporation's address in a timely manner as the reason service was delayed, however, the California

OPPOSITION TO MOTION TO VACATE DEFAULT JUDGMENT - 3

Corporation website shows the new address clearly (exhibit A). Defendants imply that a whole YEAR has passed with their address not being updated, despite "working with vendors" to update these addresses (DKT 26, ¶3).

12. In DKT 24, Section II Statement of Facts, defendants argue the merits of the case. The Defendants attack aspects of the claims made in DKT9, denying the claims, without regard to accuracy. As an example: *"Plaintiffs further claim they were not voted in by the SCA population as Baron and Baroness when they should have been"* is inaccurate and a false narrative. Such a claim was never made. See DKT 9, ¶28.

13. Plaintiffs deny the claim that the SCA lacks culpability. Plaintiffs contend that the SCA willfully ignored the summons. The clerk entered a default judgment on May 18, 2023 (DKT 18). Plaintiff's Proposed Order (unsigned) was entered on May 19th (DLT 19). Defendants did not submit an appearance until an hour later.

14. Plaintiffs have shown above that the Defendants had ample opportunity and resources to be aware of the lawsuit, but in typical SCA fashion, they chose to ignore the situation rather than address it. In their request to vacate the motion (DKT 24) the Defendants put forth lies as facts, as shown above. This shows culpability.

15. Rule 60(b)(1), states *"a court may relieve a party of a judgment or order for "mistake, inadvertence, surprise or excusable neglect."* None of these situations apply, as by their own declarations (DKTS 25 & 26) there was no mistake, no inadvertence, no surprise, and no excusable neglect. There was simply negligence on the part of the Defendants in answering the summons.

OPPOSITION TO MOTION TO VACATE DEFAULT JUDGMENT - 4

16. Section 2 of DKT 24 claims a Meritorious Defense. Plaintiffs are ready and able to prove that the SCA, by virtue of its Governing Documents, including its Code of Conduct, Social Media Policy and Core Values, claims responsibility over its members. Members who fail to follow the policies are threatened with various levels of sanctions, including, but not limited to the revocation and denial of membership. Therefore, Plaintiffs deny this claim.

17. Section 2 states: "*Many of Plaintiffs claims as alleged in their complaint occurred on Facebook.*" and "*The SCA has no control over what happens on Facebook and what conduct Facebook users choose to engage in while on this media platform.*" (DKT 24)  The SCA has a Social Media Policy in place which governs the actions of its members online. (See exhibit F page 3, *Section II.SCOPE part A.(b)*). The SCA revoked Plaintiff George Parker's membership for a comment made on Facebook (See Exhibit G). Therefore, demonstrably, the SCA claims control over the social media activity of its members via its Social Media Policy and other corporate documents. If the SCA has no control over the content posted by its members as claimed by Defendants in DKT 24 , then it should not have revoked George Parker's membership in the first place, thereby proving Plaintiffs claim of unjust removal and of negligence in following its own corporate policy. Therefore, Plaintiffs deny this claim.

18. Defendants assert that " *SCA is based on volunteer participation and is not a work environment"*.  US District Courts have rejected the defense that compensation is required to bring a worker within the employment discrimination protections of the Act. (Volling v. Antioch Rescue Squad, N.D. IL, No. 11 C 04920, 12/4/12.)  Courts have also "...squarely rejected the 'tyranny of labels'

OPPOSITION TO MOTION TO VACATE DEFAULT JUDGMENT - 5

advocated by the defendants in brandishing the term 'volunteer' as a shield to ward off liability under Title VII [of the civil Rights Act of 1964]". As such, Hostile Work Environment applies. Therefore, Plaintiffs deny this claim.

19. Defendants claim "*Plaintiffs complain they were not voted into the positions of Baron and Baroness by the SCA membership. SCA cannot control the manner in which its members vote.*" (DKT 24 section II ¶ 2) Such a claim was never made. See DKT 9, ¶ 28. Therefore, Plaintiffs deny this claim.

20. Defendants claim that Lori Parker is asking for her membership to be reinstated which implies that she is not a member, however, this claim is also false as shown in (Exhibit B), a screen shot of Defendants own website showing Lori Parker's membership current and in good standing.

21. Plaintiffs contend that RCW 4.16.080(2) does not apply. Cornell Law/LEX defines emotional distress as: "*Emotional distress refers to mental suffering as an emotional response to an experience that arises from the effect or memory of a particular event, occurrence, pattern of events or condition. Emotional distress can usually be discerned from its symptoms (ex. Anxiety, depression, loss of ability to perform tasks, or physical illness).*" As there are no physical damages claimed, RCW 4.16.080(2) does not apply. Plaintiffs have ample proof to support their claim of emotional distress which occurred in the several years prior to the removal of Plaintiff George Parker's membership, which will be provided as appropriate should this matter move forward. Therefore, Plaintiffs deny this claim.

22. Defendants further claim *"Plaintiffs' complaint appears to be one of allegations that SCA violated its own rules, but they have failed to identify what specific rules were violated or how."* Such arguments would be made if the matter moves

forward. Plaintiffs have provided the SCA on several occasions, the policies and procedures violated by the organization via its officers and Board of Directors, and been ignored. Defendants sidestepped responses or simply refused to respond. See Exhibit E for a list including but not limited to, policies violated that Plaintiffs sent to the SCA on or about July 6th, 2022 . Therefore, Plaintiffs deny this claim.

23. DKT 24 states *"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, 'the standard is whether [plaintiffs] ability to pursue his claim will be hindered.'"* Defendants quote TCI,244 F. 3d at 696 wherein it states that to vacate a default judgment such a motion must pass a three factor test, Plaintiffs has shown that defendants have failed to prove factor 1 and 2, therefore, factor 3 is moot.

## II.    CONCLUSION

The culmination of all the errors enumerated herein, on the part of SCA representatives, and specifically Eben Kurtzman, VP and Du Cray, VP, along with their own attorney misrepresenting the facts of the filing timelines, clearly demonstrates the level of negligence we are alleging in our complaint.

Plaintiffs have shown that Defendants have failed to meet the burden necessary for vacating the Default Judgment.

Defendants state the 3-factor standard by which a judgment can be overturned. Plaintiffs have shown that Defendants (by their own statements) had knowledge of the

OPPOSITION TO MOTION TO VACATE DEFAULT JUDGMENT - 7

lawsuit when it was filed, and failed to take adequate steps to insure timely responses to filings. Defendants admit to In-House counsel having signed on to CourtListener SPECIFICALLY to be notified if Plaintiffs moved forward with a lawsuit.

Defendants state that they worked with vendors for a year to update their address, which Plaintiffs have shown was updated on the California Commission website, therefore, Defendants have no reasonable explanation as to why service was delayed.

Defendant's claim the Plaintiffs lawsuit was "rejected" , when no such rejection was filed. Any attorney, such a Mr. Kurtzman, should be able to differentiate between a case being rejected by the court and an unsigned recommendation to dismiss from a lower court.  In-House counsel for Defendants is in a position to be cognizant of court procedures and terminology, and as such, has offered no valid excuse for failing to not only be notified, but act on the lawsuit in a timely fashion. Defendants have a Fiduciary duty to remain informed of court filings on a case in which they (or their clients) are named and which they had every reason to believe would be imminent.

Plaintiffs have proven Defendant's culpability in willfully, deliberately or in bad faith failing to answer Plaintiffs' complaint.

Defendants claim a meritorious defense, yet Plaintiffs have proven via exhibits, that Defendants claims are false, and that Defendants indeed monitor and control member behavior standards and social media content.  Defendants claim that Lori Parker is not a member, Plaintiffs have proven this to also be false (Exhibit B). Plaintiffs have proven

OPPOSITION TO MOTION TO VACATE DEFAULT JUDGMENT - 8

that Defendants are attempting to mislead the Court with untrue statements and allegations in an effort to vacate the judgment. As Defendants will sanction members up to and including revoking membership, clearly, Defendants' claim to "lack of responsibility" is proven false.

Having failed to meet two (2) of the three (3) standards for showing "Good Cause", Plaintiffs hereby request that the Court DENY defendants Motion to Vacate Default Judgment, and instead GRANT Plaintiffs Motion for Default Judgment.

Dated: May 30, 2023

Respectfully submitted,

*[signature]*

George DC Parker II, and

*[signature]*

Lori A Parker,

OPPOSITION TO MOTION TO VACATE DEFAULT JUDGMENT - 9