Honorable Robert J. Bryan

George Parker
10710 199th Street East
Graham, WA 98338
(253) 302-0014
TheNorseGypsyForge@gmail.com

GEORGE PARKER: IN PRO PER

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

George DC Parker II, and :

Lori A Parker,

Plaintiff(s),

v.

THE SOCIETY FOR CREATIVE : ANACHRONISM, INC., a/k/a/ "SCA" : or "SCA, Inc.", et.al,

Defendant(s).

Case No. 3:23-cv-05069-RJB

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendant's motion for summary judgment is not only untimely, but also based on unsupported assumptions. The court should reject this motion and allow the parties to fully present their arguments and evidence.

## I. INTRODUCTION

1. Defendant is premature in filing this motion. Defendant has circumvented time constraints of the depositions of Plaintiff Lori Parker and Plaintiff George Parker. Plaintiffs are afforded 30 days to review and certify their depositions as being true and accurate. Plaintiffs were not given access to the copies of their depositions. We received an email of the signature page on January 18, 2024 and a login to a 3rd party website that is supposed to give us access to the actual depositions, however,

Defendant's Court Recorder has as yet to authorize our sign in.  Even if we accept the email date of January 18th, that would make the deadline for signatures February 17, 2024.  This motion comes before this court  9 days prior to Plaintiffs' deadline to certify our depositions.  Plaintiffs reserved their right to verify their depositions and sign them, however, Defendants have not afforded them sufficient time to do so.Therefore, any quotes by Defendants regarding those depositions should be disregarded until such time as Plaintiffs have signed or the court recorder has filed a "waiver of signature". Therefore, the Plaintiffs refute and deny all entries based on those depositions.

2. Defendants first provided incomplete and evasive answers to the plaintiff's interrogatories on September 8, after obtaining an extension. They then revised their answers on November 7 and December 13, following a meet and confer session with the plaintiff. On February 6, only two days before filing their motion for summary judgment, Defendants emailed the plaintiff a document titled Defendant SCA's 2nd Supplemental Responses to Plaintiffs' Discovery Requests.pdf.

3. Defendant has failed to provide sufficient evidence to substantiate their defense of following corporate procedures and policies.  Nor has Defendant shown cause why the areas of violations outlined by Plaintiffs are inaccurate or not justifiable.

4. Plaintiffs have in fact provided substantial evidence in the answers to Defendant's interrogatories of violations of corporate procedures and policies by the Board of Directors and officers of the SCA, these responses have been conveniently left out in Defendant's motion. See Exhibiut U.

5. Defendant's DKT 45 quotes excerpts from the unsigned depositions of both Plaintiffs, but fails to mention that the question asked was qualified by Plaintiff Lori Parker as to include only items not found in their original complaint and statements of evidence not found in their answers to interrogatories.

6. Defendants have not presented any proof that the Plaintiff, George Parker, knew about the rules that he allegedly broke with his social media comment, or that he understood the possible consequences of his comment resulting in his R&D. See Exhibit V, page 2. Defendants are trying to hold the plaintiff accountable for something that he was not informed of or warned about.
7. Plaintiffs showed evidence in the answers to the Defendant's Interrogatories that the corporation and its officers violated several policies and rules. See Exhibit U pages 7 through 23.
8. Plaintiffs are in fact timely in their filing of this lawsuit as their last appeal to the board's decision was filed in June 2022. This was 7 months prior to the filing of this lawsuit. A final request for reconsideration along with a warning of pending litigation was sent in time for the January 2023 board meeting, wherein the board refused to even acknowledge the email. Furthermore, Plaintiff Lori Parker was not forced to step down by the hostile work environment until May 2021, following the Exile of George Parker.
9. Defendants quote April 2, 2020 as the beginning of the deadline clock, however, the lawsuit was in fact filed on January 25, 2023. The R&D was done at the October 2021 board meeting. Therefore, Plaintiffs' first appeal would not be heard until the January 2022 board meeting. Plaintiff's second appeal was submitted June 15th, 2022 and deemed not worth considering at the July 2022 board meeting. (See Exhibit V, Page 6). Therefore, the clock did not start until AFTER the July 2022 Board meeting, which effectively ended the open case.
10. Exhibit 6 of Defendants' evidence in support of their motion shows only 2 complaints lodged against George Parker in response to his Facebook post. Only 1 complaint is shown to have "asked" for R&D. Plaintiffs maintain that 2 people out of the 2054 registered members (at the time if the incident) of the Kingdom of An Tir is only 0.09%.

This is in violation of The Organizational Handbook, (see EXHIBIT S section D Paragraph 2 on page 54). Wherein it states:

> *"The Board will consider a request for revocation or denial of membership in the SCA under any of the following circumstances:*
>
> > ***Petition to the Board by 30% or more of the membership of the kingdom of residence of the person being considered for such revocation or denial who are currently members of the SCA.***
> > *Petition by a majority of the kingdom great officers and peers of the kingdom of residence who are currently members of the SCA.*
> > *The recommendation of a duly-constituted kingdom court of chivalry.*
> > *Documentation of cause for absolute banishment.*
> > *For such reasons described in the Sanctions Handbook."*

In actuality, the home Kingdom of Plaintiffs George and Lori was Atenveldt (Arizona) at the time of the complaint. The total number of complainants from Plaintiffs home kingdom of Atenveldt is 0, therefore, the criteria required for consideration for R&D was not met. Nor were any of the other criteria cited above fulfilled prior to the Exile and later revocation of Plaintiff George Parker's membership.

11. In Plaintiffs' responses to Defendants' interrogatories, Plaintiff submitted a copy of the *Interim Mid Quarter President's Board Report* including a summary of the August 8, 2022 meeting, where a vote was held regarding sanctions for social media postings that was voted on and failed. See Exhibit T, page 4, highlighted section.

> *Motion by John St. Dennis: with regard to the potential sanctions for postings on non-official social media sites, the Board will initially uphold the Kingdom action and refer the matter to the Society Seneschal for future review. This review will take place at the Board's discretion but starting within three (3) months following receipt of the Social Media Committee's recommendations for the handling of such postings.* ***No second. Motion failed.***

This excerpt from the September President's Board Report (section: August 2020) clearly indicates that the Board would not monitor or sanction members for postings made on non-official pages. Yet that's exactly what happened- Plaintiff George Parker's membership was revoked over a post made on a private, locked down (friends only) non-sca-official page, and was therefore not subject to the SCA Social Media policy, nor

subject to Board oversight or sanctions. Plaintiff George Parker had every reasonable expectation of not being subject to SCA sanctions for posting on a personal friend's personal page. According to Defendants SCA_001580 (Marked as EXHIBIT W) Page 2, the July 24 email, from Liz Schaer, she notes to Stacy Hall that:

> *"all the "Latoya" screen captures, which are arranged in order on my report, are from her personal page in her SCA name.* ***I believe the particular post was friends-locked; I don't remember being able to see it although I can see some things on her Facebook page"***

This completely refutes Defendants false allegation that the post was made to a public page, and clearly shows their knowledge the post was made to a "private" page. (See DKT 45, page 6 P 16). Indeed, the fact that the original poster locked the post to friends-only shows she was aware of the volatility of what she was posting, and expected discussions and comments that may not have been universally accepted, and that she intended the post and comments to remain private. The post was locked, and only specific people could access it, therefore, it was not "public" as Mr. Bolster alleges. In fact, neither complainant was a party to the conversation, and the comment was not directed at either one of them, nor in fact, was it directed at any person particularly. The email thread also highlights the SCA's lack of professionalism, lack of training on the part of the investigators and lack of due care when investigating incidents. Page 3 of EXHIBIT W shows an email from Lee Clark (investigation deputy to society seneschal) that alleges the incident occurred on a Baronial facebook page, instead of a private, locked down page. Mr. Lee also states that Plaintiff George Parker was accused by "several parties", however, there is no evidence of any complaints outside that of Nykyra (Denise Coyle) and Mary LaRose. Defendants have failed to produce evidence to prove that the officers acted within the corporate document guidelines (see *Declaration of Lori Parker in opposition to Summary Judgement*). Therefore, Defendants' request to dismiss this claim should be denied.

12. Defendant has failed to produce any evidence that states that members are bound by the Corpora, Bylaws, Corporate Policies, and/or Articles of Incorporation, or where Plaintiffs signed, stated or implied any agreement to abide by said documents.

13. Exhibit S, page 6 of the document known as the Organizational Handbook, it clearly states, in part:

> *"The documents in this book **set forth the workings of the SCA, Inc. and of the Society**. Except as otherwise noted, the rules of the modern corporation (the By-Laws and the Corporate Policies of the SCA, Inc.) apply only to the US and other areas not separately incorporated, while the document named Corpora **governs all the Kingdoms of the Society**, wherever they exist." (*Exhibit S, Page 6*).*

No mention is made of members being obligated to adhere to the documents.  Nor has Defendants provided proof that such a requirement exists. Therefore, these documents pertain **ONLY** to the running of the corporation and are not specifically applied to the general members of the society. Page 9 of Exhibit S goes on to describes the corporate documents as:

> *B. Role of Corpora*
> *Corpora serves as a framework for the structure of the historical re-creation activities of the Society, and **applies equally to all branches** worldwide, regardless of corporate affiliation. The various Board-approved Policies of Society officers **provide guidance for the operations of those offices**.*

Cementing the role of the corporate documents as the documents that govern the CORPORATION, not the  general members. Based on this, holding members to articles meant for governing the organization is in defiance of corporate policy itself. This is also shown in the Society Seneschal's Handbook (Exhibit Y) page 6,  Section I. Introduction, #1 and #4, wherein it specifically states the document is *"for branch operations"* and that the document is *"meant primarily for Kingdom Seneschals",* not general members. The membership documents do not require adherence to the corporate documents, nor is there any signature page that shows members are aware of the content of the documents and agree to abide by them. There are no requirements for membership, and

no restrictions. Membership sign-up requirements consist of name, address and credit card.

14. In Defendants Exhibit 12, Defendant is quoting excerpts from Plaintiff's answer to Interrogatory 13, in an attempt to mislead the Court to an erroneous conclusion. Defendant conveniently failed to quote Plaintiffs' proceeding answer to Interrogatory 11, which goes into further detail of what corporate policies the BoD and the SCA officers violated. See Exhibit U, page 7.

15. Defendant has failed to show that the "**just and stated cause**" as outlined in their Organizational Handbook, Exhibit S, page 39, had been met to support either the Exile or R&D of Plaintiff George Parker. Plaintiff demonstrated this fact to Defendants in their answers to Defendants' Interrogatories #11, pages 10 and 11. Defendant has failed to address it, which constitutes an assumption/admission of accuracy. (see also *Declaration of Lori Parker in Opposition to Summary Judgement*) Therefore, Defendants Motion should be denied.

16. Defendants quote. RCW 24.03A.010. This statute is the definitions page of Chapter 24.03A RCW WASHINGTON NONPROFIT CORPORATION ACT governing Non Profit 501(c)(3) corporations. Nowhere in the definitions page of this statute does it mention filing limits, nor did Plaintiffs mention this particular statute in any filing. What Plaintiffs did quote was RCW 24.03A.495; "Standards of Conduct for Directors" as one of the many laws Defendants have violated, and which Defendants have tried to mislead this court.

17. All of these facts have been presented to Defendants so to now claim that Plaintiffs have no legal or factual basis in this lawsuit is disingenuous and would appear to be another attempt to mislead this court to draw an erroneous conclusion.

18. Allegations of prior bad acts by Plaintiff George Parker as stated in Defendant's filings assumes facts not in evidence, therefore, all such allegations should be deemed

inadmissible and should not be considered by this court. No investigations were conducted with Plaintiffs as the targets (wrongdoers) in reference to these alligations, nor were any sanctions handed down as a result.  Defendants have submitted nothing except unfounded, unverified allegations and innuendo, with no verifiable proof. In fact, these allegations are belied by the bestowing  the kingdom's highest award for arts and sciences, the Jambe de Lion, in 2019, and the Silver Falcon given Sept. 2020 by Blatha An Oir (Exhibit AE, page 3).

19. Allegations of prior bad acts by Plaintiff Lori Parker as stated in Defendant's exhibits assumes facts not in evidence, therefore, all such allegations should be deemed inadmissible and should not be considered by this court.. In fact, these allegations are belied by the many **Commendations to the Board** (Exhibit H) during her tenure as Kingdom YAFA Officer, and her excellent track record of not only running the program, but running it successfully.  She had been a valuable asset to the organization, as evidenced by the numerous accolades she received to the Board for her outstanding performance as the Kingdom YAFA Officer. Under her leadership, the program flourished and achieved remarkable results, reaching and empowering young adults across the kingdom. Her vision, dedication and professionalism were instrumental in making the program a success story that was widely recognized and praised. Unfortunately, after she resigned from her position, the program suffered a rapid decline and was eventually terminated by the corporation. This shows how much of an impact she had on the program and on the organization as a whole. (See Exhibit H, SCA resume of Lori Parker and Exhibit AE page 7.) Defendants have submitted nothing to refute this, except unsubstantiated and unproven allegations and innuendo.

20. Defendants negligently failed to protect Plaintiffs from potential harm when they knowingly failed to inform them of potentially actionable threats that were being made on an official SCA Baronial Facebook page from which they had been banned following the

exile of George Parker. Instead Defendants chose to cover up these potential crimes of their members, as evidenced by the subsequent archiving of that page, making it no longer accessible to Plaintiffs or law enforcement. This negligence placed both Plaintiffs at great risk due to the fact that some of the threats were credible enough that the whole page was shut down. See Defendants DKT 34-2 Exhibit 2 Page 7, *NB footnote, Stacy Hall report. Although Defendants would still have access to these records they have failed to produce them in Discovery.  Therefore, Defendants Motion should be denied and should be ordered to turn over copies of these threads from their social media.

## II. FACTS NOT IN DISPUTE

1. No actions or evidence that would be considered or construed as Just and Stated Cause was ever shown by Defendants nor submitted by them, in clear violation of the rules for Exile as outlined in the Organizational Handbook (Exhibit S), Page 39  for Plaintiff George Parker's R&D.  See Exhibit U, pages 11 - 12 for a complete list of the criteria for "just and stated cause". This is a violation of corporate documents, as well as a violation of WAC 123Q-10-215, which states that threats must include a "*reasonable fear of harm to person or property*" and that the *"fear must be a fear that a reasonable person would have under **ALL** circumstances"*. Plaintiff George Parker's comment was unspecified as to target, did not single out a specific person or group of persons, and clearly did not incite a fear that covered ALL circumstances. WAC 123Q-10-215 goes on to state: "*Words alone do not constitute malicious harassment unless the context or circumstances surrounding the words indicate the words are a threat*." By exiling George Parker, and later removing his membership from the organization, the SCA clearly violated WAC 123Q-10-215.

2. Evidence supporting Plaintiff's claim that Defendants violated corporate policy by NOT following the documents has been submitted by Plaintiffs, therefore, Defendants Motion should be denied.
3. Defendants violated corporate policies as outlined in (Exhibit S) the Organizational Handbook, page 6 by holding Plaintiff George Parker to a standard set for corporate officers and the running of the corporation itself and is not stated to be a standard of behavior for members. Evidence thereof has been submitted by Plaintiffs, therefore, Defendants Motion should be denied.
4. Defendants violated corporate policies as outlined in (Exhibit S) the Organizational Handbook, as outlined in Interrogatory #11, pages 7 through 24, with evidence thereof that has already been submitted by Plaintiffs, therefore, Defendants Motion should be denied.
5. Defendants have failed to recognise or acknowledge the disclaimer on the document "Organizational Handbook" (also known as *Corporate Policies* or *Corpora*) where it CLEARLY states on Page 6 (Exhibit S)

> *" The documents in this book set forth the workings of the SCA, Inc. and of the Society. Except as otherwise noted, the rules of the modern corporation (the By-Laws and the Corporate Policies of the SCA, Inc.) apply only to the US and other areas not separately incorporated, while the document named Corpora* ***governs all the Kingdoms of the Society,*** *wherever they exist."*

Page 9 goes on to further define the role of the corporate documents as:

> *B. Role of Corpora*
> *Corpora serves as a framework for the structure of the historical re-creation activities of the Society, and applies equally to all branches worldwide, regardless of corporate affiliation. The various* ***Board-approved Policies of Society officers provide guidance for the operations of those offices****.*

This proves beyond doubt that the governing documents were and are intended for the running of the corporation, and NOT for the governing of the members' behavior, despite the Board and officers fear mongering tactics to the contrary. The section "Role of

Corpora" has been unchanged for decades, signaling the corporation's intention to respect the autonomy and privacy of its members. Any attempt to impose arbitrary rules or sanctions on the members is a violation of the corporate documents and a breach of fiduciary duty. The Board and officers have no authority to interfere with the members' personal choices, as long as they do not harm the corporation or its assets. The members have the right to challenge any such interference in court and seek appropriate remedies. Defendants have failed to produce any evidence that they followed corporate documents, and instead, have supplied further evidence of their own wrongdoing. Consequently, Defendant's motion should be denied.

6. Defendants were aware of Plaintiff George Parker's disabilities, which qualified him as a member of a protected class under the policy he allegedly violated. Plaintiffs presented evidence that Defendants did not protect him from discrimination or harassment, nor did they discipline those who engaged in such conduct, in breach of their corporate documents. Plaintiffs have already submitted proof of these claims, and therefore, Defendants' Motion should be rejected.

7. Defendants' DEI Policy states that *"When a participant violates the code of conduct we require, we let them know so they can adjust their behavior."* See EXHIBIT AB page 3, The SCA failed to attempt corrective actions for this behavior using the least restrictive methods, therefore violating stated policy.

8. Page 12, Section F of the Organizational Handbook states that:

> *"F. Sanctions*
>
> *1. Sanctions and administrative actions should be proportionate and appropriate."*

Plaintiffs submitted to Defendants during discovery evidence that another SCA member in An Tir, Jean Pierre Colbert, was given several warnings and was barred from posting multiple times for posts made on OFFICIAL SCA pages. (See EXHIBIT Z) Jean Pierre Colbert was sanctioned, barring him from participation for a period of 5 years. This is in

direct contrast to the sanctions handed out to Plaintiff George Parker, who received no warnings, and was barred for life, over a comment made on a locked-down, private page. This incident reveals the underlying prejudice that affects the decision-making of some local officers, as well as the organizational failure to ensure uniform standards and procedures across the organization. It is unacceptable that such a blatant violation of due process could occur in a society that claims to uphold the rule of chivalry and courtesy. Plaintiffs have submitted evidence to prove that the initial sanction of “Exile “ and the subsequent revocation of membership is neither proportionate nor is it appropriate. The organization's actions were in clear violation of its fiduciary duty to act in the best interest of the organization and its members. By failing to address the concerns and grievances of two valuable and productive members, the organization effectively forced Plaintiff Lori Parker to resign. This not only resulted in a loss of talent and expertise, but also damaged the morale and trust of remaining members, who counted on the continuation of the YAFA program. The organization also did not work with Plaintiffsto get them to stay, but rather ignored their requests and complaints. This was a gross mismanagement and negligence of the organization's responsibilities and obligations.

9. Exhibit S, page 45 has the objectives of the SCA listed as:

> *III. OBJECTIVES AND PURPOSES*
>
> > *The SCA shall be dedicated primarily to the promotion of research and re-creation in the field of pre-17th century Western culture, as stated in greater detail in Article II of the SCA's Articles of Incorporation.*

Article II of the Articles of Incorporation (Exhibit S, page 45) state the purpose of the organization to be:

> *II. This corporation is a nonprofit public benefit corporation and is not organized for the private gain of any person. It is organized under the Nonprofit Public Benefit Corporation Law for charitable purposes. The purposes for which this corporation is formed include:*
>
> > *a. Research and education in the field of pre-17th-Century Western Culture.*

> *b. Generally, to engage in research; publish material of relevance and interest to the field of pre-17th-Century Western Culture; to present activities and events which re-create the environment of said era, such as, but not limited to, tournaments, jousts, fairs, dances, classes, et cetera; to acquire authentic or reproduced replicas of chattels representative of said era; and to collect a library.*

By summarily removing Plaintiff George Parker from the membership, the Board of Directors clearly violated the Articles of Incorporation and Corporate Policies stated objectives. Plaintiff George Parke has a 30 plus year history of service to the organization through holding offices, teaching classes and excellence in the arts for which the SCA claims is a primary goal (See Exhibit AE pages 1-3 retrieved Feb. 18,2024). By removing him, the SCA also lost Plaintiff Lori Parker, whose service and dedication to the SCA also spans over 30 years (See Exhibit AE pages 4 thru 7, retrieved Feb.18, 2024). This clearly goes against the board acting in the best interests of the organization. Neither George nor Lori Parker committed crimes, or were otherwise unfit for membership, as outlined on page 53 of Exhibit S, and in fact, Plaintiff Lori Parker is still eligible for membership even today.

10. The Plaintiffs have presented clear and convincing evidence that Defendants did not comply with the corporate documents, while Defendants have failed to provide any proof to counter this claim. Defendants have only made baseless and vague accusations against the Plaintiffs, without any factual support or legal basis. Additionally, Plaintiffs have submitted ample evidence to show Defendants lack of continuity when meteing out sanctions and Board actions. Therefore, Defendants' request to dismiss this claim should be denied.

11. Plaintiffs presented ample examples of unlawful conduct as shown in Plaintiffs EXHIBIT U, page 24 through 28. A fact conveniently ignored by Defendants. Evidence thereof has been submitted by Plaintiffs, therefore, Defendants Motion should be denied.

12. Defendants breached their fiduciary duty when they failed to act in the best interests of the corporation by violating the aforementioned rules and policies in order to make a

political statement. Kingdom officers failed to show Just and Stated cause for their actions against Plaintiff George Parker. (see Declaration of Lori Parker in Opposition to Summary Judgement) Evidence thereof has been submitted by Plaintiffs, therefore, Defendants Motion should be denied.

## III. STATEMENT OF ISSUES

1. Should Plaintiffs claim of negligent actions of the SCA that took place before April 17, 2021 be dismissed because they are barred by the three-year statute of limitations?

Answer: No

Plaintiffs' claims of negligence stemmed from incidents in 2020, 2019 and 2018, within the 3 year limit from the date of the Exile of George Parker (April 2, 2021).

2. Should Plaintiffs claim of negligent actions of the SCA resulting in Plaintiff George Parker's R&D be dismissed because the SCA followed its own by-laws?

Answer: No.

Plaintiffs have submitted an abundance of evidence showing Defendant's failure to adhere to corporate policy in regards to the investigations and the ultimate revocation of membership. Defendants have failed to provide any evidence supporting their claim that the SCA followed corporate policies and procedures.

3. Should Plaintiffs claim of economic business loss, attorney's fees and punitive damages be dismissed for lack of evidence or any statutory basis for the same?

Answer: No

Plaintiffs have not asked for attorney fees. Plaintiffs have demonstrated financial loss of business and reputation, and have successfully provided medical records supporting

their claim of punitive damages. The minute Plaintiffs reopened our Norse Gypsy Forge Facebook page, a citizen of An Tir immediately posted a threat to us, proving that the loss and threats suffered is real and continuing.

IV. Summary

Plaintiffs exhausted every possible avenue to work reasonably with the Board of Directors, allowing ample time for the Board of Directors to review all documents relating to the initial Exile, the investigation for Revocation and the subsequent appeals. Plaintiffs filed well within the 1 year time limit Defendant claims, beginning the clock in July of 2022, the date of the SCA's final refusal to hear an appeal. For that reason, this suit is timely and should not be dismissed on that basis.

Plaintiff Lori Parker was a DeFacto employee, and so is and was entitled to the protections given employees for hostile work environments. The ongoing harassment, passive-aggressive behavior and general work environment cited by Lori Parker in the deposition excerpt quoted in DKT 45 caused Plaintiff Lori Parker years of anxiety and other health issues. Defendants have failed to provide evidence that supports their claim that none of those conditions existed. For that reason, this suit should not be dismissed on that basis.

Plaintiffs have provided ample evidence of Defendants' non-compliance and/or breach of corporate policies and/or guidelines, such as documents, emails, screenshots and copies of defendants' own corporate records. Defendants have failed to produce any evidence that they have adhered to corporate policies and guidelines, as required by law.

Therefore, Defendants Motion for Summary Judgement is without merit and should be denied.

Dated: February 23, 2024

Respectfully submitted,

George DC Parker II, and

Lori A Parker,

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 16