Honorable Robert J. Bryan

Lori Parker
10710 199th Street E
Graham, WA 98338
520-302-0015
alizaunde@gmail.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

Lori A Parker,

                Plaintiff(s),

      v.

THE SOCIETY FOR CREATIVE :
ANACHRONISM, INC., a/k/a/ "SCA" :
or "SCA, Inc.", et.al,

            Defendant(s).

Case No. 3:23-cv-05069-RJB

DECLARATION OF Lori Parker IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Plaintiff Lori Parker opposes defendants motion for Summary Judgement for the following reasons:

### I.    Untimely

1. Defendants have submitted the motion prematurely.  Plaintiffs submitted their complaint on January 25th, 2023. The complaint was entered on Jan. 26, 2023, then

there was an order to show cause on 3.7.2023, and the case was reentered on April 17,2023.

2. Defendants claim that the case was filed on April 17, 2023 is erroneous, and continue their efforts to mis-lead the court as to dates, times and circumstances. Court documents show the actual filing date to be January 25th, 2023. This is a blatant attempt by Defendants to make the timeline fit their narrative, despite factual evidence to the contrary.

3. This is also exactly what the defendants did when they submitted conflicting information as their notification of the case: see DKT 24, wherein defendants claim that their lack of timely response was due to address changes from a move done a year prior. Despite admitting to having been aware that the complaint was filed in January. See DKT 24

4. Plaintiffs filed their complaint on January 25th, 2023, which was entered on the court's docket the next day. On March 7th, 2023, the court issued an order to show cause. The case was reentered on the docket on April 17th, 2023, after Plaintiffs submitted a response to the order.

5. Plaintiff, Lori Parker, has been prejudiced by the defendants' late submission of discovery materials and their hasty motion for summary judgment.

6. On September 8th, 2023, after obtaining an extension of time, Defendants served Plaintiffs with incomplete and evasive answers to their interrogatories, utilizing boilerplate responses in contradiction to Rule 33(b)(4). On November 7th, 2023, Defendants served their second set of responses, which were still incomplete and evasive, utilizing boilerplate objections. On December 13th, 2023, the parties met and conferred about the discovery issues, agreeing to expand the timeline for information

from 3 years to 5 years.  On February 6, only two days before filing their motion for summary judgment, the defendants emailed Plaintiff George Parker a document titled **Defendant SCA's 2nd Supplemental Responses to Plaintiffs' Discovery Requests.pdf.**

7. Defendants have violated Plaintiffs' right to due process by emailing Plaintiff George Parker a large volume of discovery materials two days before filing their motion for summary judgment, after they had been the beneficiary of several weeks leeway in gathering the emails. Plaintiff Lori Parker is not registered with PACER/ECF and relies on the US Postal Service to receive and review the documents filed in this case. Defendants have not given Plaintiffs sufficient time to examine the documents and prepare a response to their motion. The documents that Defendants have recently provided are lengthy and complex, and this motion does not allow Plaintiffs enough time to analyze them and respond effectively. Therefore, this motion should be denied.

8. Plaintiffs George and Lori have NOT signed the deposition transcripts, prior to the Defendants filing their Motion. The depositions took place on Jan. 5th, 2024 and Plaintiffs had to register on a 3rd party site to access the copies of the depositions, instead of having them mailed or emailed. Plaintiffs have yet to receive copies of the depositions for review. Nor has the clerk filed a waiver of signature. Therefore, Plaintiffs object to, refute and deny all entries based on those depositions.

9. On December 29th, Plaintiffs filed a Motion to Compel. Over a MONTH later, on February 6th, 2024, Defendants emailed Plaintiffs a document titled "Defendant SCA's 2nd Supplemental Responses to Plaintiffs' Discovery Requests.pdf". On February 8th, 2024, Defendants filed their motion for summary judgment.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

10.  The documents that Defendants have recently provided are lengthy and complex, and this motion does not allow Plaintiffs enough time to analyze them and respond effectively. Defendants Motion is premature, and we have not been accorded sufficient time to completely review the information sent. For this, and the other reasons listed above, Defendants Motion should be denied.

11.  The Defendants' disclosure of voluminous documents on February 6th is prejudicial to Plaintiffs, who cannot adequately prepare their defense or depositions under this motion. Therefore, this motion should be rejected.

## II. Lack of Evidence

12.  Defendants argue that Plaintiffs have not provided any proof for their allegations. However, this is not true. Plaintiffs have sent many documents, emails, screenshots etc to Defendants through US Postal Service that corroborate and substantiate their allegations.

13.  Plaintiffs maintain that the SCA has not shown any proof that it followed corporate policies, while we have given sufficient evidence to Defendants to show the opposite.

Please see Exhibit U, *Plaintiffs answer to defendant's Interrogatories*:

**Page 7: INTERROGATORY NO. 11**:
**Page 5: INTERROGATORY NO. 9**:
**Page 24: INTERROGATORY NO. 13**:
*Page 29:* **INTERROGATORY NO. 15**:.
*Page 51:* **INTERROGATORY NO. 21**:

14.  Defendants have failed to recognise or acknowledge the disclaimer on the document "Organizational Handbook" (also known as *Corporate Policies* and *Corpora*) where it CLEARLY states on Page 6 (Exhibit S)

" *The documents in this book set forth the workings of the SCA, Inc. and of the Society. Except as otherwise noted, the rules of the modern corporation (the By-Laws and the Corporate Policies of the SCA, Inc.) apply only to the US and other areas not separately incorporated, while the document named Corpora* **governs all the Kingdoms of the Society,** *wherever they exist.*"

Page 9 goes on to further define the role of the corporate documents as:

*B. Role of Corpora*

*Corpora serves as a framework for the structure of the historical re-creation activities of the Society, and applies equally to all branches worldwide, regardless of corporate affiliation. The various* **Board-approved Policies of Society officers provide guidance for the operations of those offices***.*

This proves beyond doubt that the governing documents were and are intended for the running of the corporation, and NOT for the governing of the members' behavior, despite the Board and officers fear mongering tactics to the contrary. The section "Role of Corpora" has been unchanged for decades, signaling the corporation's intention to respect the autonomy and privacy of its members. Any attempt to impose arbitrary rules or sanctions on the members is a violation of the corporate documents and a breach of fiduciary duty. The Board and officers have no authority to interfere with the members' personal choices, as long as they do not harm the corporation or its assets. Defendants have failed to produce any evidence to support any claim that Plaintiff George Parker harmed the corporation by the comment made on a private page.

The Seneschal's Handbook, page 6 also states:

"*I. INTRODUCTION*

*1. The Seneschal's Handbook is an official document of the Society for Creative Anachronism, and as such delineates policy, procedure, and recommended best practices for* **SCA branch operations***"*

and

*"4. This document supports and complements the branch operations implementation of the governing documents, but does not supersede or supplant anything in the governing documents. While this handbook is **meant primarily for Kingdom Seneschals, all branch Seneschals should be using the information** contained herein."*

No where, in any of the documents, does it state that members are required to follow the corporate documents, nor is there any signature on file that proves Plaintiff George Parker read and agreed to abide by the documents. Again, Branch Operations do not include member behavior.

15.   The document and all other corporate documents do not state that they regulate the conduct of their members. Plaintiffs argue that without a signature that confirms the receipt of the documents and the agreement and intention to abide by them, Defendants cannot enforce compliance from Plaintiff George Parker. The documents only try to scare the members by implying that certain conduct "could" result in sanctions "up to and including" revocation of memberships. The SCA has not shown that George knew of any rule violations that he might have committed. In fact, Plaintiff George Parker asked repeatedly for information regarding the exact nature of his offense: (See exhibit- email to Stacy Hall, investigator: EXHIBIT V page 2. )

16.   Exhibit 6 of Defendants' evidence in support of their motion shows only 2 complaints lodged against George Parker in response to his Facebook post. The Organizational Handbook, Page 54 (Exhibit S) (Board Consideration) shows:

*2. Board Consideration*
*The Board will consider a request for revocation or denial of membership in the SCA under any of the following circumstances:*
*• Petition to the Board by 30% or more of the membership of the kingdom of residence of the person being considered for such revocation or denial who are currently members of the SCA.*

*• Petition by a majority of the kingdom great officers and peers of the kingdom of
residence who are currently members of the SCA.*
*• The recommendation of a duly-constituted kingdom court of chivalry.*
*• Documentation of cause for absolute banishment.*
*• For such reasons described in the Sanctions Handbook.*

17.   At the time of the posting, I would point out that An Tir, where the complainants reside, was NOT the home Kingdom of Plaintiffs, and in fact, Atenveldt (Arizona), the actual state the membership was registered in,  DECLINED to take any action whatsoever on the matter. (See Defendants Exhibit 2) Defendants have failed to show any evidence of actions that would prove officers or the Board of the SCA followed the guideline stated above.

18.   Any other allegations of complaints, bad behavior or prior bad acts is merely unsubstantiated hyperbole by Defendants, and has no basis in fact. Defendants have failed to provide evidence to support such a claim, therefore this claim has no merit on its face.

19.   Defendants have failed to provide evidence that the investigations were fair and impartial, as required by the document "Investigators Guide" (Exhibit AC). Defendants have failed to provide evidence that the investigator assigned to "investigate" the complaint in 2019, or the complaint in 2021, were sufficiently trained or knowledgeable in investigative process and procedure. In fact, Plaintiffs have proven that the investigation done in 2019 was performed by a person who was friends with the antagonizer, and that she was biased, since she refused to interview the witnesses to the incident until directed to do so by the SCA Seneschal at the time, Mike Watkins.

20.   The Defendants have failed to prove that the investigation into the post made by Plaintiff George Parker was investigated following the investigation guide, as none of the other posters were ever interviewed.

21.    Plaintiffs have provided evidence that the post made on April 1st, 2021, was made on a private page that Defendants admit was "locked down" (see Exhibit W, Page 2)  so as to be visible to only a few select people.

22.    Plaintiffs have provided evidence that the board of Directors, in August of 2020 (Exhibit T, page 4) voted on a motion to sanction members for content on non-official pages. That Motion was not seconded, and failed to pass.

> *Motion by John St. Dennis: with regard to the **potential sanctions for postings on non-official social media sites**, the Board will initially uphold the Kingdom action and refer the matter to the Society Seneschal for future review. This review will take place at the Board's discretion but starting within three (3) months following receipt of the Social Media Committee's recommendations for the handling of such postings. **No second. Motion failed.***

 The Board Minutes clearly show that the Board of Directors did not approve any standards for imposing sanctions on postings made to pages that are not under the SCA's jurisdiction, as of 8 months before the April 1st incident. Therefore, the sanctioning of Plaintiff George Parker for his posting on a non-official SCA page was in direct contradiction to the Board's expressed intention. A reasonable person would interpret the Board Minutes official entry as evidence that postings made to non-official SCA pages were not subject to any action by the SCA.

23.    SCA Defendants failed in their Fiduciary duty of acting in the best interests of the Organization by removing a 30+ year member with a long, verifiable history of volunteering and excellence in the research which is the primary goal of the SCA. In removing George Parker, the result was the loss of 2 members, both highly awarded and active participants being removed from the organization, since I am unable and unwilling to attend events alone. See Exhibits H and I, SCA resumes of George and Lori Parker. Defendants violated RCW 24.03A.495, which reads, in part:

*Standards of conduct for directors.*

> *(1) Each director, when discharging the duties of a director, shall act:*
>
> *(a)* **In good faith;**
>
> *(b)* **With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and**
>
> *(c)* **In a manner the director reasonably believes to be in the best interests of the nonprofit corporation**.

24.    The American Bar Association holds that*:*

> *"In general, every contract contains an implied duty of good faith and fair dealing. This duty requires that neither party will do anything that will destroy or injure the right of the other party to receive the benefits of the contract."*

25.    Defendants further failed their Fiduciary Duty of working in the best interest of the company by falling to protect Plaintiff Lori Parker. During her tenure as Kingdom YAFA Officer, she received many commendations to the Board, concerning her excellent track record of not only running the program, but running it successfully.  She had been a valuable asset to the organization, as evidenced by the numerous accolades she received to the Board for her outstanding performance as the Kingdom YAFA Officer. Under her leadership, the program flourished and achieved remarkable results, reaching and empowering young adults across the kingdom. Her vision, dedication and professionalism were instrumental in making the program a success story that was widely recognized and praised. Unfortunately, after she resigned from her position, the program suffered a rapid decline and was eventually terminated by the corporation. This shows how much of an impact she had on the program and on the organization as a whole.

26.    The SCA violated this trust between corporation and member by removing George Parker without Just and Stated Cause, as required by corporate document the Organizational Handbook, Exhibit S, page 39 part C,1 and page 46, part C3. See also

Exhibit Q, Sanctions Guide, page 3, section 4 B, which fails to mention the possibility of a revocation of membership, as it does for the Kingdom Sanction: Temporary Removal from Participation in the Society.

27.   The defendants have failed to provide evidence that the officers of the corporation followed the accepted standards for "Just and Stated Cause", (see Exhibit S, page 39). "Exile" is defined as a Royal Sanction per corporate documents.

*C. Sanctions*

*1. Royal Sanctions*

*a. The Crown of a Kingdom may sanction subjects, residents and visitors within the borders of the Crown's Kingdom, **for just and stated cause.** Royal Sanctions take effect from the moment of proclamation, but a notice must be announced in court and also be published in the next available issue of the kingdom newsletter if the sanction is to remain in effect. Within 15 business days of the imposition of the sanction, the specific cause and occasion of the sanction must be explained in writing to the sanctioned individual.*

28.   "Just and Stated Cause" standards are commonly held to be a minimum of 7 factors, and as many as 12, that include but not limited to the following:

*1. The employee knew of the company's policy*

*2. The company's policy was reasonable*

*3. The company investigated to determine that the employee violated the policy*

*4. The investigation was fair and objective*

*5. Substantial evidence existed of the employee's violation of the policy*

*6. The company's policy was consistently applied*

*7. The discipline was reasonable and proportional (the punishment fit the crime)*

By including this phrase in the section "Royal Sanctions" (Exhibit S, page 39) the SCA implies its adherence to the standard, commonly-held practices as outlined above.

29.   Defendants have offered no evidence to refute Plaintiffs claim that the steps to show "Just and State Cause" were **NOT** followed. Plaintiffs have provided proof that:

1) Plaintiff George Parker did NOT know of the rule he supposedly violated (Exhibit V page 2),

2) the removal of his membership was unreasonable as it was not on an sca-managed page and the Board voted down sanctioning members for posts on non-official social media (Exhibit T page 4),

3) the investigation was flawed, done by investigators with no verifiable training and without witnesses being interviewed, consisting solely of screenshots taken out of context. Defendants own DKT 34-2 outlines the lack of witness statements and lack of investigation in An Tir,

4) the investigation was neither fair nor objective. Exhibit W shows a clear bias on the part of the defendants officers, and erroneous information being given to the Board prior to the investigation even beginning,

5) no other evidence was submitted for the so-called investigation except the screenshot from a private, locked down thread that neither complainant was a party to, nor was either complainant targeted by the comment, bringing their motive under suspicion,

6) company policy was not applied consistently - Plaintiffs have shown that NO OTHER EXILE has ever been investigated for R&D, and indeed, it goes against corporate policy to do so (exhibit AD, page 6 and 33, 34). Plaintiffs submitted evidence that others were given multiple warnings and lesser sanctions for comments on sca-managed social media sites (see Exhibit Z), who also was given little to no information regarding what rule he had broken. Additionally, Exhibit W, page 1 (highlighted section) shows that members of Blatha An Oir were simply told to "sit down and

shut up" rather than have sanctions imposed on them for their bad
behavior (threats) which resulted in the local FB page being archived.
And finally,

7) Due to the private nature of the thread the comment was made on, the fact
that the complainants were NOT of Plaintiff's home Kingdom, nor did the
2 complainants constitute 30% of the home Kingdom of Plaintiff George
Parker, the punishment was neither reasonable nor proportionate to the
incident.

Clearly, the Defendants have NOT followed corporate documents.

30.   In November 2022, Liz Schraer presented a training powerpoint *SHE CREATED*
(Exhibit AD) that clearly states guidelines for when to accept a complaint, on page 5:

*"Did the reported behavior happen in an SCA context? At an event, practice, or other*
*official SCA function?*
*On an official SCA social media channel or a closely adjacent one?*
*Is there a pattern of behavior and some of it was in an SCA context?*
*Have you received complaints regarding this individual before?*
*Is it appropriate to spend time and energy on this complaint?"*

The complaint was not based on an incident that occurred at an official event or other
official function, as required by the corporate policy. Nor was it on an official sca
channel. There was no previous pattern of behavior documented, and no previous
investigation that resulted from verifiable complaints regarding either Plaintiff. It was not
appropriate to spend time on the complaint, as the complaint was made by a 3rd party,
not involved in the conversation, and on a private, locked down thread. Therefore, the
Kingdom Seneschal and the Corporate Seneschal acted in violation of the established
procedure when they accepted and processed the complaint.

31.   Page 6 (Exhibit AD) of the training document goes on to state:

Declaration of Lori Parker - 12

*Receiving complaint(s):* **No Third-Party Complaints!** *Bullying, sexual misconduct, or other person to-person interaction must have a complaint from the actual person(s) to whom the behavior was directed.*

Complainants of the April 1st posting were not even participants on the thread, nor was the comment directed specifically at them or anyone in particular, and therefore, should have been considered third-party complainants, and the complaint dismissed. Therefore, the Kingdom Seneschal and the Corporate Seneschal acted in violation of the established procedure when they accepted and processed the complaint.

32.   Page 33 and 34 of the training document (Exhibit AD) describes what an EXILE is:

*Exile from the Kingdom:*
*Overview*
**Lasts only for duration of the reign;**
*may be repeated once for the same reason.*
*Limits all SCA participation, including social media outlets, only in the sanctioning kingdom.*
*May participate in other kingdoms.*
*May be appealed to the Society Seneschal.*
**Requires Board review to uphold but typically does not require Society Investigation.***
*Exile from the kingdom: Specifics*
*Sanctioned individual must be notified of Sanction prior to the Society Seneschal's receipt of the Sanction Packet.*
*Includes a ban on social media within the kingdom issuing it,* **for duration (sic) of the reign.**
*They can be "muted" rather than removed.**
*Notify Society Seneschal promptly (within 72 hours).*
*Board must review this as soon as is practical.*
*Must have a full packet to the Society Seneschal within 30 days of issuance*

No where does the training document suggest, state or otherwise imply that the Board will do anything other than review the exile. No where in any SCA organizational document does the criteria for Revocation and Denial of membership include Exile- unlike the Temporary Removal from Participation (TRP) that the kingdom did not impose. See Exhibit AD pages 35 and 37.

33.   The "Exile " sanction imposed clearly states in multiple documents that it ENDS with the reign- (Exhibit AD, page 32)(Exhibit Q, page 3)  **"Lasts only for duration of the reign"**. Therefore, the Kingdom Seneschal and the Corporate Seneschal acted in violation of the established procedure when they accepted and processed the complaint. The seneschals (both) and Board violated policy when it assigned an investigator to the incident, as the complaint was a 3rd party complaint, filed outside the home kingdom by less than 30% of the home kingdom registered members and done on a page outside sca-managed social media, as plaintiffs have provided clear evidence in support of.

34.   The SCA has failed to provide evidence that any investigator having interaction with either Plaintiff was trained at all in investigative processes, and has certainly failed to provide evidence of training on interpersonal disputes, interactions with persons with disabilities or any proof reflecting any experience on the part of the investigators in dealing with people with disabilities, especial the "invisible" disabilities such as Autism Spectrum Disorders.

35.   Exhibit W page 1 shows that Liz Schraer spoke to the Board PRIOR to the investigation being completed. On July 25, 2021, Ms. Schraer states

> "I am not sure whether the Board is interested in a full "lifetime achievement award" or just this instance. I do know they wanted to hear the Crown;'s reasons for doing an exile rather than a TRP–the Board considered ordering me to do a TRP, but decided that

*they didn't know the Crown's mind, they would rather find that out as part of the investigation"*

This clearly shows that Ms. Schraer spoke of the incident to persons NOT involved with the incident or investigation, contrary to the guidelines in the Investigations Manual (Exhibit AC, page 1, #2) Exhibit W shows that on July 23, 2021, the investigations deputy Lee Clark mischaracterized the incident as having taken place **"on a baronial FB page**" (Exhibit W, page 3)  This was erroneous information that may have unduly influenced the Board into making the choice to investigate Plaintiff George Parker for revocation of membership, and certainly unduly prejudicing them in advance of the actual investigation report.

36.   *DKT 45 part II: Statement of Undisputed Facts.* Defendants once again try to influence and mislead the Court by claiming that personas created in the SCA somehow show connection that is actionable when used in areas or on social media not governed by SCA.

37.   Plaintiffs have shown how SCA names and Heraldic Devices (armory) are used in other organizations including EMP (Empire of Medieval Pursuits), SMA (Society for the Middle Ages) and general LARP (Live Action Role Playing) groups and are NOT indicative of nor exclusive to SCA use. Therefore, the SCA cannot hold names or armory as a definitive SCA "connection" as asserted by Mr Bolster (DKT 45, page 2 footnote). Both Plaintiffs regularly use their medieval names for emails (see multiple examples in exhibits), SMA, LARP, Renn Faire and more. Defendants have failed to prove that use of those names denote exclusive SCA participation. Use of a name or persona initially developed for use in the SCA does NOT confer absolute power over the user by the SCA. See Exhibit H.

38.   I personally have experienced a vast amount of hostile attitude on the part of those in An Tir (the Pacific Northwest). This continued all the way up to the day I resigned following George's Exile. Medical records obtained by Defendants via subpoena show the long-standing effects of anxiety and depression stemming from the behavior of the Officers and Peers of the SCA, which began shortly after my stepping into the role as Kingdom YAFA officer and continuing after I stepped up to the Society YAFA position. Passive aggressive behavior, rudeness and outright harassment are actionable under most business Human Resources policies. The Defendants have failed to show any evidence to the contrary, and therefore, since the conditions of a hostile work environment in An Tir continued till May of 2021, that claim should remain and not be dismissed.

39.   Regarding the Baronial Polling. The Defendants assert that they lack any knowledge or records pertaining to the polling conducted in 2019. The SCA provides email accounts through Microsoft, a fact I am aware of from my previous role as a YAFA Officer. Microsoft emails were established to facilitate the transfer of information as offices were transitioned between outgoing and incoming officers. This is what occurred for me as Baronial Herald, and as YAFA Officer. To state that there are no records is incomprehensible, as the corporation has arranged things to ensure that information remains available.

40.   The SCA Document Retention Policy EXHIBIT AA states on page 1:

> #10 "It is imperative that the Company knows which documents have been retained and which documents have been discarded. Therefore, extra files including correspondence, notes, memoranda, computer discs, tapes, etc. which are maintained in individual offices, or any other approved off-site location are subject to these guidelines and shall not be retained in excess of these guidelines. **Such records shall not be stored and maintained at home or on personal computers at any time."**

1
2
3
4
5

Emails referencing the Baronial Polling clearly fall under the Records Retention Policy, and the SCA appears to be trying to cover up potentially litagat-able information found within those records. Exhibit W clearly shows redacted email addresses, in defiance of accepted standard for redaction of evidence (Rule 5.2). At best, the officers in charge of such information violated the corporation's records retention policy. At worst, it is a heinous act of deliberate omission in an attempt to hide exculpatory evidence..

6
7
8
9
10
11
12

41.   The SCA has produced no evidence to back its assertions that the SCA officers and Board followed procedures. In contrast, we have submitted evidence that conclusively proves that the SCA failed to follow its own documents, and failed to protect us from harassment. EXHIBIT W, one of the few documents we have had an opportunity to view, shows that I submitted a complaint to the Society Seneschal, which was brushed off, (See page 1, highlighted section). This proves, as asserted in Plaintiffs initial complaint, that when the SCA doesn't like something it is their wilful and negligent unwritten policy to "ignore it and it will go away".

13
14
15

42.   The Defendants have failed to provide evidence that Plaintiff George Parker was aware of the rule they claim he violated,or that he had read the Corporate documents and agreed to abide and be bound by them.

16
17
18
19

43.   In DKT 45, section E. Plaintiffs' Alleged Damages are not Recoverable. Defendants fail to present any evidence of their assertion. Plaintiffs, however, have submitted financial documents and medical history to support not only the loss of income, but the emotional and physical damage that is a direct result of the flawed Exile and Revocation of membership.

20
21

### III. STATEMENT OF ISSUES

1. Should Plaintiffs claim of negligent actions of the SCA that took place before April 17, 2021 be dismissed because they are barred by the three-year statute of limitations?

Answer: No

> Plaintiffs' claims of negligence stemmed from incidents in 2020, 2019 and 2018, within the 3 year limit from the date of the Exile of George Parker (April 2, 2021).

2. Should Plaintiffs claim of negligent actions of the SCA resulting in Plaintiff George Parker's R&D be dismissed because the SCA followed its own by-laws?

Answer: No.

> Plaintiffs have submitted an abundance of evidence showing Defendant's failure to adhere to corporate policy in regards to the investigations and the ultimate revocation of membership. Defendants have failed to provide any evidence supporting their claim that the SCA followed corporate policies and procedures.

3. Should Plaintiffs claim of economic business loss, attorney's fees and punitive damages be dismissed for lack of evidence or any statutory basis for the same?

Answer: No

> Plaintiffs have not asked for attorney fees. Plaintiffs have demonstrated financial loss of business and have successfully provided medical records supporting their claim of punitive damages. The minute we reopened our Norse Gypsy Forge Facebook page, a citizen of An Tir immediately posted a threat to us, proving that the loss we suffered is real and continuing.

Plaintiffs have provided ample evidence of Defendants' non-compliance and/or breach of corporate policies and/or guidelines, such as documents, emails, screenshots and copies of defendants' own corporate records. Defendants have failed to produce any evidence that they have adhered to corporate policies and guidelines, as required by law.

Therefore, Defendants Motion for Summary Judgement is without merit and should be denied.

Dated: February 23, 2024
Respectfully submitted,

Lori A Parker

Declaration of Lori Parker - 19