UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GEORGE DC PARKER, II & LORI A PARKER,<br><br>　　　　　　　　　　Plaintiff,<br>　v.<br><br>THE SOCIETY FOR CREATIVE ANACHRONISM, a/k/a SCA and/or SCA, INC.,<br><br>　　　　　　　　　　Defendant. | CASE NO. 3:23-cv-05069-RJB<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CLOSING CASE |

This matter comes before the Court on the Defendant The Society for Creative Anachronism, Inc., a/k/a SCA or SCA, Inc.'s ("SCA") Motion for Summary Judgment (Dkt. 45) and the Plaintiffs' motions to delay the summary judgment motion in order to acquire more discovery (Dkts. 47 and 48), which should be construed as a motion pursuant to Fed. R. Civ. P. 56(d). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

The Plaintiffs, *pro se,* filed this case asserting claims for hostile work environment, negligence and negligent infliction of emotional distress in connection with events which

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CLOSING CASE - 1

1  allegedly occurred while the Plaintiffs were members of the SCA, a private club.  Dkt. 9.  The
2  SCA, a California based nonprofit, now moves for summary judgment (Dkt. 45) and the
3  Plaintiffs move the Court to either delay considering the motion so that they can engage in more
4  discovery or argue that the Court should deny the motion (Dkts. 47 and 48).  For the reasons
5  provided below, the Plaintiffs' motion to delay the decision (Dkts. 47 and 48) should be denied,
6  the SCA's motion for summary judgment (Dkt. 45) should be granted, and the case dismissed.

### I.     RELEVANT FACTS AND PROCEDURAL HISTORY

**A.  FACTS**

**1.  SCA**

The SCA is a nonprofit private club "devoted to the research and re-creation of pre-seventeenth century skills, arts, combat, and culture."  Dkt. 9 at 4.  The SCA is governed by a board of directors.  Dkt. 46-11 at 4.  It is divided into twenty regions called "kingdoms, which, in turn are divided into subchapters."  Dkt. 9 at 4. The SCA's medieval structure creates leadership positions in the individual kingdoms called "monarchs," collectively referred to as "the Crown."  Dkt. 46-11.

The SCA has a handbook containing the "Corpora,[1]" by-laws, corporate policies, and articles of incorporation.  Dkt. 46-11.  Pursuant to the SCA's Sanctions Procedures and Policies Manual, "the Crown" may impose temporary sanctions against members for "violations of any provision of the Corpora, SCA Corporate Documents, and/or Kingdom Law."  Dkt. 46-4 at 9. Sanctions include exile from that kingdom.  *Id.*

---

[1] According to the SCA's By-Laws, the "corpora" are the documents "defining the structure of the medieval organization used by the SCA in its recreations and including minimum requirements and guidelines for that organization." http://www.sca.org/wp-content/uploads/2019/12/govdocs.pdf last accessed March 1, 2024.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CLOSING CASE - 2

If a member is sanctioned by the Crown, the member must be given notice; the board is also sent notice of the sanction. Dkt. 46-4 at 12-13. The board may "[u]phold or overturn the sanction" and/or "[e]xtend the sanction and request [an officer] investigate the matter for a determination of the need for additional action up to and including Revocation of Membership and Denial of Participation." Dkt. 46-4 at 14. The board serves as the final "court of appeals" for disputes. Dkt. 46-11 at 3. Permanent membership revocation and participation bans may be made by the board for violation of the by-laws or Corpora of the SCA or on a "formal recommendation arising out of procedures for the purpose defined in Corpora for medieval structure of the SCA." Dkts. 46-4 at 4 and 46-11 at 4.

### 2. The Plaintiffs as Members of the SCA

The Plaintiffs were members of the "Kingdom of An Tir, Barony of Blabtha an Oir" from 2006 to 2021. Dkt. 9 at 6. Plaintiff Lori Parker served in a leadership position for the Kingdom of An Tir's Youth and Family Achievement group. Dkt. 46-1 at 5. This was an unpaid volunteer position. *Id.* She contends that she was harassed while in that position and was removed from that position on October 22, 2017. Dkt. 9 at 8. Mrs. Parker moved to a leadership position at the "society" level but testified that she is not basing any harassment claims on events that occurred while she was in that position.[2] Dkt. 46-1 at 6. When asked to point to other examples of harassing events, Mrs. Parker points to Mr. Parker allegedly being called a "Nazi" and Mrs. Parker being called "abusive" by another SCA member before "the polling for Baron

---

[2] Mrs. Parker submitted an unsworn declaration in which she contended that she resigned her society level position in 2021 because she was not being treated well. Dkt. 48. Even if she submitted the declaration in the proper format and under oath, the court need not credit this assertion of later poor treatment; it contradicts her deposition testimony that her workplace harassment claim was based only on treatment that occurred before October of 2017. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

and Baroness" in 2019. Dkt. 46-1 at 11. Mrs. Parker contends that she and Mr. Parker were being attacked online by several SCA members and that they were subjected to "passive aggressive" behavior by some members. *Id.* at 11-15.

When Plaintiff George Parker participated in SCA events, and other medieval re-creation activities, he uses the name Hakon Thorgeirsson. Dkt. 46-2 at 3. On April 1, 2021, Mr. Parker, using his SCA persona Hakon Thorgeirsson, posted the following on another SCA member's SCA Facebook page:

> To those who support my stand, thank you. To those who are interferent or don't understand it, I would encourage you to re-read the comments wherein I'm being called "sis dude" and tell me that that term isn't being used as much as an insult as calling a homosexual a homo or fag. All you faggots can stick your reticule and scorn up your collective asses along with everything else you seem to like to stick there.

Dkt. 46-3 at 2. The SCA received two complaints about Mr. Parker's post. Dkts. 46-6 at 2-4. The next day, April 2, 2021, the local SCA leadership, "the Crown," "exiled" Mr. Parker as a sanction for violating the SCA's Core Values and policy against hate speech.[3] Dkts. 46-7 at 2; 46-8 at 8. Mr. Parker was notified by letter dated April 2, 2021 of the sanction and that it was referred to the board for automatic review. *Id.* As part of the review process of the decision to "exile" Mr. Parker, the SCA board gave him the opportunity to appear by video and have a verbal discussion or to respond in writing. Dkt. 46-2 at 5. Mr. Parker opted to respond in writing. Dkt. 46-2 at 5-6; 46-8 at 2-7.

---

[3] The SCA's Corpora, Section X.A.4. provides:

> Hate speech is not tolerated in the Society. Hate speech is speech or symbols that offend, threaten, or insult individuals or groups, based on race, color, religion, national origin, sexual orientation, disability or other traits. Such symbols and speech have no essential part of any discussion of ideas and are of so little value to the Society that any benefit that may be derived from them is clearly outweighed by the harm caused. The use by any participant in the Society may result in possible sanctions up to and including revocation of membership and denial of participation.

Dkts. 46-8 at 8 and 51-4 at 4.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CLOSING CASE - 4

On May 25, 2021, the board upheld the "Crown's" decision to exile Mr. Parker and ordered an investigation be done to determine whether to permanently revoke his membership and ban him from participating in the SCA. Dkt. 46-9 at 3. Mr. Parker was notified of the board's decision and informed that he would have an opportunity to submit additional information, if he wished. *Id.* Mr. Parker testified that he was given an opportunity to provide all the information he wished to provide. Dkt. 46-2 at 6. On October 21, 2023, Mr. Parker's membership in the SCA was permanently revoked and he was banned from participating in the SCA. Dkt. 9 at 14. Mr. Parker twice appealed the decision, and the board denied his appeals. Dkt. 51-1 at 2.

**B. PROCEDURAL HISTORY**

The Plaintiffs filed an application to proceed *in forma pauperis* ("IFP") and a proposed civil complaint on January 25, 2023. Dkt. 1. After being notified of deficiencies in their IFP application, which they cured, their application was granted. Dkt. 8. Their complaint was filed on April 17, 2023. Dkt. 9. They assert damages claims for hostile work environment in connection with Mrs. Parker's leadership position in the Kingdom of An Tir's Youth and Family Achievement group, which ended in 2017, negligence, and negligent infliction of emotional distress. Dkt. 9. As part of their damages claim, the Plaintiffs contend that they had a forge and produced items for sale at SCA events which they can no longer do. *Id.* The Plaintiffs also seek injunctive relief from the Court to include ordering the SCA to revoke the board's sanctions against Mr. Parker, grant Plaintiffs lifetime memberships, and revise the SCA's governing documents, policies and procedures. *Id.* at 21-24.

## II.  DISCUSSION

**A. JURISDICTION**

1    The Court has jurisdiction over the case due to the diversity of the parties' citizenship (Washington state and California) under 28 U.S.C. § 1332.  Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction, as here, apply state substantive law and federal procedural law.  *Gasperini v. Center for Humanities*, *Inc.*, 518 U.S. 415, 427 (1996).  In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it.  *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).

**B. MOTION TO STRIKE DECLARATION OF LORI PARKER**

The SCA moves to strike the declaration of Lori Parker.  Dkt. 49.  It points out that the declaration was not made under oath and contains argument in opposition to the summary judgment.  *Id.*

The motion (Dkt. 49) should be denied without prejudice.  While the SCA's motion has merit, to fully consider all issues in this case, the declaration should not be stricken.  Where her declaration conflicts with her deposition testimony, however, it will not be credited.  "Self-serving testimony, made when an individual is faced with summary judgment, that contradicts clear evidence on the record need not be given credence by the court."  *See Teller v. Dogge,* 8 F. Supp. 3d 1228, 1234 (D. Nev. 2014).  "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."  *Kennedy* at 266*.*  To the extent that her "declaration" (Dkt. 48) is intended to be a supplemental response to the Plaintiffs' initial response to the motion for summary judgment (Dkt. 47), the "declaration" (Dkt. 48), was considered.

**C. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986); *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, which is a preponderance of the evidence in most civil cases. *Anderson* at 254; *T.W. Elect.* at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect.* at 630. Conclusory, non-specific statements in affidavits are insufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888–89 (1990).

**D. PLAINTIFFS' MOTION TO DELAY OR DENY THE SUMMARY JUDGMENT BASED ON TIMING OR NEED FOR MORE DISCOVERY**

Under Fed. R. Civ. P. 56(d):

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

A party requesting a continuance, denial, or other order under Rule 56(d) must demonstrate: (1) they have set forth in affidavit form the specific facts they hope to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n. 6 (9th Cir. 2001); *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).

The Plaintiffs move to continue or deny the motion for summary judgment pursuant to Rule 56(d) in order to acquire additional discovery and/or review the discovery sent by the Defendant on February 6, 2024. Dkts. 47 and 48. Their motion (Dkts. 47 and 48) should be denied. They have failed to point to specific facts they hope to get from additional discovery to show that those facts exist, or that the sought-after facts are essential to oppose the SCA's summary judgment motion. Moreover, the discovery deadline has passed. Dkt. 38.

The Plaintiffs complain that they did not have a full 30 days to review their deposition testimony transcripts or time to review some of the SCA's discovery responses. Their complaints are without merit. The Plaintiffs acknowledge that they received notice that their depositions were ready for review on January 18, 2024. Dkt. 47 at 1-2. Their failure to review

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CLOSING CASE - 8

those depositions is not grounds to delay the motion for summary judgment. Further, the Defendant's discovery responses were sent 20 days before the Plaintiffs' response to the motion for summary judgment was due. (Pursuant to Local Rule W.D. Wash. 7(d)(3), Plaintiffs' responses to the motion for summary judgment were due on February 26, 2024. Even though the Plaintiffs are acting *pro se,* they are required to follow the Federal Rules of Civil Procedure and the Local Rules of the Western District of Washington. *See King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987)(*overruled on other grounds*)). They have failed to demonstrate that an extension is warranted. Contrary to the Plaintiffs' assertions, there is no rule prohibiting the SCA from filing a summary judgment a month before the summary judgment deadline. The SCA's motion for summary judgment should now be considered.

**E.  CLAIMS BASED ON EVENTS OCCURRING BEFORE JANUARY 25, 2020**

The SCA moves for summary judgment on all claims based on events occurring before January 25, 2020, arguing that they are barred by the statutes of limitations. Dkt. 45.

The statute of limitations for a Washington Law Against Discrimination ("WLAD") hostile work environment claim is three years. *Antonius v. King Cnty.*, 153 Wn.2d 256, 261-62 (2004)(noting that the WLAD does not contain its own limitations period; accordingly, WLAD claims must be brought within three years under the general three-year statute of limitations for personal injury actions, RCW 4.16.080(2)). Likewise, claims for negligence and negligent infliction of emotional distress must be brought within three years. RCW 4.16.080(2).

Absent statutory text to the contrary, and there is none applicable here, the statute of limitations period begins when a claim accrues. *Killian v. Seattle Pub. Sch.*, 189 Wn.2d 447, 454 (2017). Washington applies the discovery rule to determine when a statute of limitations begins to run. *Id.* Under that rule, a cause of action accrues when the plaintiff knew or should have

known, through the exercise of reasonable diligence, the essential elements of the cause of action. *Id.*

The Plaintiffs filed this case on January 25, 2023. Dkt. 1. Any claims based on events which occurred before January 25, 2020 are barred by the applicable statute of limitations.

**Hostile Work Environment – WLAD.** Mrs. Parker testified that the Plaintiffs base their hostile work environment claim on events which occurred before Mrs. Parker was removed from the kingdom level volunteer leadership position in October of 2017. Dkts. 9 at 8 and 46-1 at 6-7. There is no evidence or creditable assertion that she did not know, or in the exercise of reasonable diligence should not have known, of the factual basis for her alleged hostile work environment claim in October of 2017. She had until October of 2020 to file her case. This case was filed several years too late. To the extent they bring a WLAD claim based on a hostile work environment that claim should be dismissed as time barred.

**Hostile Work Environment – Title VII.** It is not clear whether the Plaintiffs are asserting a hostile work environment claim under state or federal law. To the extent the Plaintiffs are asserting a federal law based hostile work environment claim pursuant to Title VII of the 1964 Civil Rights Act, their claims are also time barred.

The Plaintiffs acknowledge that they did not exhaust Mrs. Parker's Title VII claim (if any) with the Equal Employment Opportunity Commission ("EEOC") or the Washington Human Rights Commission ("WHRC")(Dkt. 46-1 at 19), as they are required to do by statute. 42 U.S.C. § 2000e-5(e)(1). Failure to do so is fatal to a Title VII claim. *Sommatino v. United States,* 255 F.3d 704, 707 (9th Cir. 2001)(holding that in order to bring a Title VII claim in district court, a plaintiff must first exhaust their administrative remedies by filing a complaint within the EEOC). Further, their failure to file a complaint with the EEOC within 180 days or the WHRC within

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CLOSING CASE - 10

300 days of the last act of alleged discrimination, results in their Title VII hostile work environment claim being time barred. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109 (2002). Their hostile work environment claim should be dismissed with prejudice.

**Negligence and Negligent Infliction of Emotional Distress Claims.** To the extent that the Plaintiffs bring negligence and negligent infliction of emotional distress claims against the SCA for events occurring before January 24, 2020, those claims are barred by the three-year statute of limitations. The Plaintiffs point to other "harassing" events and make general allegations of name calling (Dkt. 46-1 at 11-15) but do not demonstrate that any actionable event, aside from Mr. Parker's removal from the group, occurred after January of 2020. All Plaintiffs' negligence and negligent infliction of emotional distress claims, except the claims related to Mr. Parker's membership revocation and ban, should be dismissed as barred by the statute of limitations.

The Plaintiffs refer to RCW 23.03A, *et. seq.,* a Washington statute governing non-profit entities like the SCA. In particular, they point to RCW 24.03A.495, which provides "standards of conduct for directors." Under RCW 24.03A.495, directors of boards "shall act: (a) in good faith, (b) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (c) in a manner the director reasonably believes to be in the best interests of the nonprofit corporation."

To the extent that the Plaintiffs are asserting a claim under RCW 24.03A.495, they fail to address the SCA's argument that RCW 24.03A.375 provides that proceedings challenging a termination of membership in a nonprofit "for any reason must be commenced within one year after the effective date of the termination." The Plaintiffs' RCW 24.03A.495 claim, if any, is barred by the statute of limitations in RCW 24.03A.375.

**Conclusion on Statutes of Limitations.** All the Plaintiffs' hostile work environment claims, based on state law, and to the extent they make one, on federal law, should be dismissed as time barred by the statutes of limitations. All Plaintiffs' negligence and negligent infliction of emotional distress claims based on events occurring after January 25, 2020 are also barred by the statute of limitations and should be dismissed.

This opinion will now address Plaintiffs' negligence and negligent infliction of emotional distress claims based on events alleged to have occurred after January 25, 2020.

F. **NEGLIGENCE CLAIMS BASED ON EVENTS OCCURRING AFTER JANUARY 25, 2020**

As the basis of their negligence claim, the Plaintiffs point to various provisions of the SCA's governing documents and argue that the SCA board violated those documents when it decided to revoke Mr. Parker's membership and ban him from future events. Dkts. 47 and 48. They also argue that the board failed to protect them from passive aggressive behavior, online attacks, and threats of potential harm from other SCA members. *Id.* It is not clear from the record when this treatment occurred, but for purposes of this motion, the Court will assume that at least some of it happened after January 25, 2020.

To prevail on a negligence claim, a Washington plaintiff "must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury." *Turner v. Washington State Dep't of Soc. & Health Servs.*, 198 Wash.2d 273 (2021)(*internal quotation marks and citations omitted*).

 1. Duty

As to the first negligence element, duty, under Washington common law, every individual and entity owe a duty of reasonable care to refrain from causing foreseeable harm in interactions with others. *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 550, 442 P.3d 608,

614 (2019).  Aside from the duty of reasonable care, the Plaintiffs fail to point to an additional recognized legal duty that the SCA, as a private club, owed them.

        2.  <u>Breach</u>

Each of the underlying bases where the Plaintiffs allege that the SCA breached its duty of reasonableness will now be addressed.

**Mr. Parker's Membership Revocation and Ban**.  In deciding the SCA's summary judgment motion on this portion of the Plaintiffs' negligence claim, this Court is mindful that Washington courts are hesitant to interfere with a private club's decision to expel members and that interference is "applied with considerable judicial restraint."  *Davis v. Pleasant Forest Camping Club*, 171 Wn. App. 1027 (2012); *Garvey v. Seattle Tennis Club*, 60 Wn. App. 930, 933 (1991).

With that in mind, to the extent that the Plaintiffs argue that the SCA failed to follow the requirements in the governing documents and that failure was unreasonable, the Plaintiffs' negligence claim should be dismissed.  The Plaintiffs have failed to demonstrate that the SCA unreasonably failed to follow the requirements of its governing documents.  The board was empowered to sanction members for violating the "Corpora," including revoking their membership and permanently banning them.  Dkts. 46-4 at 4 and 46-11 at 4.  Mr. Parker was sanctioned for violating Corpora Section X.A.4, the provision on hate speech.  Dkts. 46-8 at 8 and 51-4 at 4.  It is undisputed that Mr. Parker was given notice of the sanctions, and several opportunities to be heard as is required under the governing documents.  The Plaintiffs complain that what constitutes "hate speech" is subjective and Mr. Parker's post was not on an official SCA website.  They quibble with other portions of the decision, maintaining that the "just and stated cause" for the revocation of his membership and ban from participation was not met to the

1   Plaintiffs' satisfaction.  They further maintain that the SCA board's actions were not

2   "honorable," contrary to the organization's ideals of medieval chivalry.  The Plaintiffs'

3   contentions relate to the board's interpretation of its own laws.  In Washington, great deference

4   is accorded to a voluntary association's interpretation of its own laws; courts only interfere if

5   such an interpretation is arbitrary and unreasonable.  *Davis* at 3.  There is no showing that the

6   board's interpretation of its own laws was arbitrary or unreasonable here.

7         The Plaintiffs contentions that the SCA's codes of conduct do not apply to them as

8   members is without merit.  The SCA's handbook and various other documents clearly indicate

9   that the organization's codes of conduct apply to members.  There is no dispute that Plaintiffs

10  were SCA members. That Mr. Parker alleges that he did not know about the particular hate

11  speech rule he allegedly broke provides him no relief.  The Plaintiffs point to other members

12  who received lower sanctions for online posts.  They did not, however, demonstrate that the

13  other members were similarly situated to Mr. Parker.

14        The Plaintiffs' negligence claim based on revocation of Mr. Parker's membership and

15  banning him from participation in SCA events should be dismissed.  They have not pointed to

16  sufficient facts, if believed, that the SCA breached a duty of care to them.

17        **Other SCA Members' Passive Aggressive Behavior, Verbal Attacks and Threats**.

18  To the extent that the Plaintiffs assert a negligence claim based on the SCA's failure to protect

19  the Plaintiffs from other SCA members' passive aggressive behavior, verbal "attacks," and

20  threats of potential harm, their claim should be dismissed. Generally, in Washington, people and

21  businesses have no duty to aid or protect others from third-party harm.  *Barlow v. State,* 540 P.3d

22  783, 786 (Wash. 2024).  The Plaintiffs have failed to point to facts which would support an

23  exception to that general rule.  The Plaintiffs do not point to evidence, if believed, that

24

demonstrates that the SCA breached a legal duty owed them based on other SCA members' conduct toward them.

### 3. Conclusion on Negligence Claims

The Plaintiffs have failed to demonstrate that there are issues of material fact which would defeat summary judgment on their negligence claims. The SCA is entitled to a judgment as a matter of law on those claims.

### G. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS

A Washington plaintiff may recover for negligent infliction of emotional distress if they prove: (1) duty, (2) breach of that duty, (3) proximate cause, (4) damage, and (5) objective symptomatology. *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 505 (2014). To satisfy the fifth element – the objective symptomatology requirement – "a plaintiff's emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *P.E.L. v. Premera Blue Cross*, 540 P.3d 105, 124 (Wash. 2023). This purely emotional harm "must manifest in physical symptoms evidencing and resulting from the emotional distress." *M.N. v. MultiCare Health Sys., Inc.*, 541 P.3d 346, 353 (Wash. 2024)(*cleaned up*).

The Plaintiffs claims for negligent infliction of emotional distress should be dismissed. In addition to failing to show that the SCA owed them a duty of care that was breached, the Plaintiffs have failed to point to a genuine issue of material fact as to the fifth element. They do not point to a medical diagnosis, proved through medical evidence, that resulted from the SCA's alleged actions. The Plaintiffs have not pointed to evidence that they have physical symptoms resulting from the SCA's conduct. The SCA is entitled to a judgment as a matter of law on the Plaintiffs' claim for negligent infliction of emotional distress.

### H. CONCLUSION

The SCA's motion for summary judgment should be granted and this case should be dismissed. The Plaintiffs have failed to meet their burden on summary judgment as to the elements of their claims. The SCA is entitled to a judgment as a matter of law. The Court need not reach the SCA's additional grounds for summary judgment.

The Plaintiffs' remaining contentions are without merit. Although they reference "due process," the Constitution does not apply to private social clubs like the SCA. *Garvey* at 935. Moreover, they received all process that was due them, including notice and an opportunity to be heard. The claims in this case should be dismissed with prejudice and the case closed.

### III.    ORDER

Therefore, it is hereby **ORDERED** that:

- The Plaintiffs' Fed. R. Civ. P. 56(d) motion to delay the decision on summary judgment (Dkts. 47-48) **IS DENIED**;
- The Defendant's motion to strike (Dkt. 49) **IS DENIED**;
- The Defendant's Motion for Summary Judgment (Dkt. 45) **IS GRANTED**;
- All claims **ARE DISMISSED;** and
- This case **IS CLOSED.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 11th day of March, 2024.

ROBERT J. BRYAN
United States District Judge